1
Robert W. Ferguson, WSBA #26004
Attorney General

2
Jeffrey T. Sprung, WSBA #23604

3
Alicia O. Young, WSBA #35553
Assistant Attorneys General

4
Office of the Attorney General
800 Fifth Avenue, Suite 2000

5
Seattle, WA 98104
(206) 464-7744

6

7
**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON**

8

9
STATE OF WASHINGTON,                          CIVIL ACTION NO.

10
                        Plaintiff,            COMPLAINT FOR DECLARATORY
                                              AND INJUNCTIVE RELIEF

11
                v.

12
DONALD TRUMP, in his official capacity

13
as President of the United States of
America; DON WRIGHT, in his official

14
capacity as Acting Secretary of the United
States Department of Health and Human

15
Services; U.S. DEPARTMENT OF
HEALTH AND HUMAN SERVICES;

16
STEVEN T. MNUCHIN, in his official
capacity as Secretary of the Department of

17
Treasury; U.S. DEPARTMENT OF
TREASURY; R. ALEXANDER ACOSTA,

18
in his official capacity as United States
Secretary of Labor; and UNITED STATES

19
DEPARTMENT OF LABOR,

20
                        Defendants.

21

22
                        **I.      INTRODUCTION**

23
        1.      This suit challenges new rules issued by the Trump Administration that illegally

24
jeopardize women's health and economic success in order to promote certain religious and moral

25

26
views. To make matters worse, the Administration implemented its new rules without regard to

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

1

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

required legal procedures. The State of Washington brings this suit to protect the state and its women residents from the substantial harm the Administration's new rules inflict.

2.     The Affordable Care Act requires most health plans and insurance providers to cover certain preventive health services at no added cost to American men and women. The initial version of the Act did not adequately cover medically necessary preventive care for women, such as contraceptive services and screening for gestational diabetes. But the Senate introduced the Women's Health Amendment, and as finally enacted in 2010 the Affordable Care Act required health plans and insurance providers to include women's preventive services at no out-of-pocket cost to women.

3.     Contraceptive use among women is widespread, with over 99% of sexually active women using at least one method during their lifetime. Consequently, the Women's Health Amendment has been a dramatic success. By 2013, most women had no out-of-pocket costs for their contraception. One study estimated that roughly $1.4 billion dollars per year in out-of-pocket savings on the pill resulted from the Affordable Care Act's contraceptive mandate.

4.     The economic implications for women also are dramatic. Research links women's access to contraception to increases in the pursuit of college and advanced professional degrees, and to career trajectories with higher pay and prestige. Access to reliable contraception has contributed to women's increased earning power and the narrowing of the gender gap in pay.

5.     On October 6, 2017, the Trump Administration issued two new regulations that slashed the contraceptive coverage introduced by the Affordable Care Act. One new set of rules allows any employer, not just a church or religious order, that asserts a religious objection to contraception to exempt itself from the requirement and carve out contraception coverage from

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

2

its workplace insurance plan. The second set of rules authorizes certain employers with moral but not religious objections to contraception to opt out of Congress's requirement. Further, the new regulations change the prior rules and now allow objecting employers to dictate whether their women employees can get contraception directly from the insurance provider, at no cost to the employer.

6.     The Administrative Procedure Act requires the federal government to provide public notice and opportunity for comment before changing substantive rights and obligations springing from the Affordable Care Act. Disregarding this obligation, the Trump Administration has made the new rules effective immediately without notice and comment rulemaking. Even if the Administration had complied with required procedures, its action would be illegal. The new regulations violate the Equal Protection guarantee and the Establishment Clause in the United States Constitution, the requirements of the Affordable Care Act, and the non-discrimination provisions of the Affordable Care Act, the Civil Rights Act, and the Pregnancy Disability Act. Finally, because the new regulations are arbitrary and capricious and ignore abundant evidence of the importance of contraceptive coverage to women's health and economic opportunity, they violate the substantive requirements of the Administrative Procedure Act.

7.     The new regulations apply to nonprofit and for-profit employers, as well as to private colleges or universities with religious or moral objections to contraception. As a result of the new regulations, choices about contraception coverage will be made by employers and private colleges and universities that issue student plans. For many women, their employers or universities will determine whether they have no-cost coverage for the full range of

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

3

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

FDA-approved contraceptive methods. Their choice of contraception will once again be limited by their own financial means.

8.     More than 2.4 million women in Washington are of child-bearing age. Up to 1.5 million women in Washington State face losing contraception coverage as a result of the Administration's new regulations. Washington maintains state government-funded programs to ensure Washington women have access to contraception and the economic opportunities it creates. Washington residents denied no-cost contraceptive coverage as a result of the new rules will be forced to turn to these programs to obtain contraceptive care. To prevent this injury to Washingtonians and the state's finances, Washington brings this suit to declare illegal and enjoin the new regulations.

## II.     JURISDICTION AND VENUE

9.     The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 2201(a) and 2202. The United States' sovereign immunity is waived by 5 U.S.C. § 702.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and (e)(1) and 5 U.S.C. § 703. Defendants are the President and three U.S. departments and their respective department heads. The State of Washington is a resident of this judicial district and no real property is involved in this action.

## III.     PARTIES

### PLAINTIFF STATE OF WASHINGTON

11.     The Plaintiff is the State of Washington. The Attorney General is the chief legal adviser to the State of Washington. The Attorney General's powers and duties include acting in federal court on matters of public concern.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

4

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

12.     The State brings this action to redress harms to its proprietary interests, its quasi-sovereign authority, and its interests as *parens patriae*.

13.     The State has declared its interest in protecting its female residents' "fundamental right to choose or refuse birth control" through statute. Wash. Rev. Code § 9.02.100.

14.     The State has a quasi-sovereign interest in protecting the health and well-being of its residents. This interest extends to ensuring that its residents have access to a full complement of affordable reproductive health care services, including contraception, and can make personal, private decisions about their reproductive health and family planning.

15.     The State also has an interest in avoiding greater costs to provide subsidized contraception and costs relating to unintended pregnancies.

16.     The State and its residents will suffer significant and irreparable harm if women's access to affordable contraception through employer-based health insurance is diminished.

### DEFENDANTS

17.     Defendant Donald Trump is the President of the United States, and issued Executive Order 13798, "Promoting Free Speech and Religious Liberty" (May 4, 2017),[1] which directed Defendants to issue the rules challenged in this lawsuit. He is sued in his official capacity.

18.     Defendant U.S. Department of Health and Human Services (HHS) is a federal cabinet department responsible for implementing and enforcing material portions of the Affordable Care Act. HHS is a Department of the Executive Branch of the U.S. Government,

---

[1] https://www.gpo.gov/fdsys/pkg/FR-2017-05-09/pdf/2017-09574.pdf

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

5

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

and is an agency within the meaning of 5 U.S.C. § 551(1). HHS is one of the agencies that issued the rules challenged in this lawsuit.

19.     Defendant Don Wright is Acting Secretary of HHS. He is sued in his official capacity.

20.     Defendant U.S. Department of Labor (DOL) is a federal cabinet department responsible for implementing and enforcing material portions of the Affordable Care Act. DOL is a Department of the Executive Branch of the U.S. Government, and is an agency within the meaning of 5 U.S.C. § 551(1). DOL is one of the agencies that issued the rules challenged in this lawsuit.

21.     Defendant R. Alexander Acosta is Secretary of DOL. He is sued in his official capacity.

22.     Defendant U.S. Department of Treasury (Treasury) is a federal cabinet department responsible for implementing and enforcing material portions of the Affordable Care Act. Treasury is a Department of the Executive Branch of the U.S. Government, and is an agency within the meaning of 5 U.S.C. § 551(1). Treasury is one of the agencies that issued the rules challenged in this lawsuit.

23.     Defendant Steven T. Mnuchin is Secretary of Treasury. He is sued in his official capacity.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

6

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# IV.   ALLEGATIONS

## A.   Statutory and Regulatory Background

### 1.   The Affordable Care Act and the Contraceptive Coverage Requirement

24.   In 2010, Congress enacted the Patient Protection and Affordable Care Act (Pub. L. 111–148) and the Health Care and Education Reconciliation Act of 2010 (Pub. L. No. 111-152) (collectively the ACA). The ACA aims to increase the number of Americans covered by health insurance and decrease the cost of health care. *National Federation of Independent Business v. Sebelius*, 567 U.S. 519, 538 (2012).

25.   The ACA, in its initial form, required non-grandfathered[2] group health plans and insurance providers to cover three categories of preventive health services at no added cost to the plan participant or beneficiary: "(1) evidence-based items or services that have in effect a rating of 'A' or 'B' in the current recommendations of the United States Preventive Services Task Force; (2) immunizations that have in effect a recommendation from the Advisory Committee on Immunization Practices of the Centers for Disease Control and Prevention with respect to the individual involved; and (3) with respect to infants, children, and adolescents, evidence-informed preventive care and screenings provided for in the comprehensive guidelines supported by the Health Resources and Services Administration." 42 U.S.C. § 300gg-13(a)(1)-(3). Prevention is a well-recognized, effective tool in improving health and well-being and has been shown to be cost-effective in addressing many conditions early.[3]

---

[2] Grandfathered health plan coverage is that which has existed continually prior to March 23, 2010 and has not undergone any of several specified changes since that time. 29 C.F.R. § 2590.715-1251 (2010). The percentage of workers covered by grandfathered plans has decreased over time. http://www.kff.org/report-section/ehbs-2017-section-13-grandfathered-health-plans/.

[3] Institute of Medicine, Clinical Preventive Services for Women: Closing the Gaps 16 (2011).

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

7

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

26.     Recognizing that the initial draft left out preventive services that "many women's health advocates and medical professionals believe are critically important," Senator Barbara Mikulski introduced the Women's Health Amendment, which added to the ACA's minimum coverage requirements a new category of preventive services specific to women's health. 155 Cong. Rec. 28841 (2009). The amendment's proponents noted that women pay significantly more than men for preventive care, and that such cost barriers operated to block many women from obtaining needed care at all. *See, e.g.*, 155 Cong. Rec. 29070 (statement of Sen. Feinstein) ("Women of childbearing age spend 68 percent more in out-of-pocket health care costs than men."); *id.* at 29302 (statement of Sen. Mikulski) ("copayments are [often] so high that [women] avoid getting [preventive and screening services] in the first place"). The sponsors noted that increasing access to contraceptive services would yield important public health gains. *See, e.g.*, 155 Cong. Rec. 29768 (statement of Sen. Durbin) ("This bill will expand health insurance coverage to the vast majority of the [17 million women of reproductive age in the United States who are uninsured] …. This expanded access will reduce unintended pregnancies.").

27.     As altered by the passage of the Women's Health Amendment, the ACA requires new insurance plans to include coverage without cost sharing of "with respect to women, such additional preventive care and screenings not [otherwise required] as provided for in comprehensive guidelines supported by the Health Resources and Services Administration for purposes of this paragraph." 42 U.S.C. § 300gg-13(a)(4). Congress included this provision because "women have different health needs than men, and these needs often generate additional costs." 155 Cong. Rec. 29,070 (2009) (statement of Sen. Feinstein).

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

8

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

28.     The Health Resources and Services Administration (HRSA) is a part of HHS. HRSA developed guidelines required under 42 U.S.C. § 300gg-13(a)(4) after consultation with the Institute of Medicine (IOM). The IOM is an arm of the National Academy of Sciences, an organization established by Congress "for the explicit purpose of furnishing advice to the Government." *Public Citizen v. Dep't of Justice*, 491 U.S. 440, 460, n.11 (1989).

29.     The IOM convened a group of independent experts, including "specialists in disease prevention [and] women's health," which prepared a report evaluating the efficacy of a number of preventive services. *See* Institute of Medicine, Clinical Preventive Services for Women: Closing the Gaps 10 (2011) (IOM Report). The IOM defined preventive services as measures "shown to improve well-being, and/or decrease the likelihood or delay the onset of a targeted disease or condition." *Id.* at 3.

30.     Based on the IOM's review of the evidence, it recommended a number of preventive services for women, such as screening for gestational diabetes for pregnant women, screening and counseling for domestic violence, and at least one well-woman preventive care visit a year. IOM Report at 8-12. Consistent with the findings of "[n]umerous health professional associations" and other organizations, the IOM experts also determined that preventive coverage for women should include the "full range" of FDA-approved contraceptive methods. IOM Report at 10, 102-110. FDA-approved contraceptive methods include oral contraceptive pills, rings, patches, diaphragms and cervical caps, injections, implants, emergency contraceptive drugs, intrauterine devices (IUDs), and sterilization.

31.     The IOM Report noted the disproportionate burden women carried for comprehensive health services and the adverse health consequences of excluding contraception

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

9

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

from preventive care available to employees without cost sharing. IOM Report at 19 ("[W]omen are consistently more likely than men to report a wide range of cost-related barriers to receiving . . . medical tests and treatments and to filling prescriptions for themselves and their families."), 103-1-4, 107 (pregnancy may be contraindicated for women with certain medical conditions, for example, some congenital heart diseases, pulmonary hypertension, and Marfan syndrome, and contraceptives may be used to reduce the risk of endometrial cancer, among other serious medical conditions), 103 (women with unintended pregnancies are more likely to experience depression and anxiety, and their children face "increased odds of preterm birth and low birth weight"). The IOM also noted that nearly half of all pregnancies in the United States are unintended, and that unintended pregnancies can have adverse health consequences for both mothers and children. IOM Report at 102-103. In addition, the IOM observed, use of contraceptives leads to longer intervals between pregnancies, which "is important because of the increased risk of adverse pregnancy outcomes for pregnancies that are too closely spaced." *Id.* at 103.

32.    Consistent with the IOM's suggestions, HRSA adopted guidelines recommending access to "[a]ll [FDA-]approved contraceptive methods, sterilization procedures, and patient education and counseling for all women with reproductive capacity" as prescribed by a health care provider. HRSA, HHS, Women's Preventive Services Guidelines (August 2011), *available at* https://www.hrsa.gov/womens-guidelines/index.html (last visited September 29, 2017).

33.    HHS, DOL, and the Treasury promulgated regulations requiring non-grandfathered group health plans to include coverage for, among other preventive services,

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

10

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

the contraceptive services recommended in the HRSA Guidelines. 45 C.F.R. § 147.130(a)(1)(iv) (2013) (HHS); 29 C.F.R. § 2590.715-2713(a)(1)(iv) (2013) (Labor); 26 C.F.R. § 54.9815-2713(a)(1)(iv)(2013) (Treasury).

34.     To address advancements in science and gaps identified in existing guidelines, including a greater emphasis on practice-based clinical considerations, HRSA awarded a five-year cooperative agreement in March 2016 to convene a coalition of clinician, academic, and consumer-focused health professional organizations and conduct a scientifically rigorous review to develop recommendations for updated Women's Preventive Services Guidelines in accordance with the model created by the IOM (now known as the National Academy of Medicine (NAM)).[4] The American College of Obstetricians and Gynecologists was awarded the cooperative agreement and formed an expert panel called the Women's Preventive Services Initiative (WPSI). WPSI submitted its report "Recommendations for Preventive Services for Women" (hereinafter WPSI Report) to HHS in December 2016. WPSI Report at iii. As to contraception, WSPI recommended that adolescent and adult women have access to the "full range of female-controlled contraceptives to prevent unintended pregnancy and improve birth outcomes." WPSI Report at 18.

35.     HRSA updated its Women's Preventive Services Guidelines on December 20, 2016, taking into account the clinical recommendations from WPSI.[5] The Guidelines continue to recommend that "the full range of female-controlled" FDA-approved contraceptive methods, effective family planning practices, and sterilization procedures be

---

[4] https://www.hrsa.gov/womens-guidelines-2016/index.html.

[5] https://www.hrsa.gov/womens-guidelines/index.html.

available as part of contraceptive care. https://www.hrsa.gov/womens-guidelines-2016/index.html.

### 2. Exemption for "Religious Employers"

36.     While the Women's Health Amendment succeeded, a countermove which would have enabled any employer or insurance provider to deny coverage based on its asserted "religious beliefs or moral convictions," the so-called "conscience amendment," was voted down by the Senate. 158 Cong. Rec. S539 (Feb. 9, 2012), S1162-S1173 (Mar. 1, 2012) (debate and vote). That amendment, as observed by Senator Mikulski, would have "pu[t] the personal opinion of employers and insurers over the practice of medicine." *Id*. at S1127 (Feb. 29, 2012).

37.     Instead, implementing regulations authorized a much narrower exemption for religious employers (defined as "churches, their integrated auxiliaries, and conventions or associations of churches," and "the exclusively religious activities of any religious order" that are organized and operate as nonprofit entities. 45 C.F.R. § 147.131(a); 26 U.S.C. §§ 6033(a)(3)A)(i), (iii)) from the requirement to cover contraceptive services under the Guidelines. 45 C.F.R. § 147.131(a); 76 Fed. Reg. 46,621 (Aug. 3, 2011).

### 3. Accommodation for "Eligible Organizations"

38.     Implementing regulations also provided an accommodation to certain "eligible organizations"—nonprofit or closely held for-profit entities[6] that object to providing coverage

---

[6] The regulations originally only provided an accommodation to nonprofit organizations. 78 Fed. Reg. 39,870, 39,872, 39,874-39,886 (July 2, 2013). However, the Supreme Court held in *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014), that that the contraceptive coverage requirement substantially burdened the free exercise of a "closely-held" for-profit corporation's religion, and that since the government had not demonstrated that the same accommodation provided to non-profits could not be made available to closely-held for-profits, the Religious Freedom Restoration Act prohibited the government from imposing the requirement on closely-held corporations. 134 S. Ct. at 2785. Accordingly, the regulations were revised to make the accommodation from the contraception mandate available to closely-held corporations. 80 FR 41,323-41,324.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

12

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

for some or all of the contraceptive items or services required to be covered under the Act. 45 C.F.R. § 147.131(b); 26 C.F.R. 54.9815-2713A(a). Such entities could opt out of providing contraceptive coverage by self-certifying to DOL or providing notice to the Secretary of HHS of their religious objections to coverage for all or a subset of contraceptive services. 45 C.F.R. § 147.131(b); 26 C.F.R. 54.9815-2713A(a).

39.    When a group health insurance issuer receives notice that one of its clients has invoked the accommodation provision, the issuer must then exclude contraceptive coverage from the employer's plan and provide separate payments for contraceptive services for plan participants without imposing any cost-sharing requirements on the eligible organization, its insurance plan, or its employee beneficiaries. 45 C.F.R. § 147.131(c). In the case of self-insured religious organizations entitled to the accommodation, the third-party administrator of the organization must "provide or arrange payments for contraceptive services" for the organization's employees without imposing any cost-sharing requirements on the eligible organization, its insurance plan, or its employee beneficiaries. 26 C.F.R. § 54.9815-2713A(b). Thus, women employed by "eligible organizations" were still entitled under the ACA to coverage for FDA-approved contraception at no additional cost to themselves.

**B.    Executive Order 13798**

40.    On May 4, 2017, President Trump signed Executive Order 13798, entitled "Promoting Free Speech and Religious Liberty." This Executive Order is attached to this Complaint as Exhibit D. The Executive Order directs the Secretaries of Treasury, DOL, and HHS to "consider issuing amended regulations, consistent with applicable law, to address conscience-based objections to the preventive-care mandate promulgated under section

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

13

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

300gg-13(a)(4) of title 42, United States Code." Under the express terms of the Executive Order, any amended regulations were required to comply with the ACA, as well as with federal non-discrimination laws and the Constitution.

**C.    2017 Interim Final Rules and 2017 Updated Guidelines**

41.    On October 6, 2017, relying in part on Executive Order 13798 as justification, HHS, DOL, and Treasury issued two sets of Interim Final Rules with respect to preventive care services for women required to be covered under the ACA (collectively referred to as the 2017 Interim Final Rules).

42.    Taken together, the 2017 Interim Final Rules greatly expand eligibility for a complete exemption to the ACA's requirement that employers ensure women have access to insurance coverage for contraception without cost. The new regulations expand the *entities* to which the exemption is available. Rather than applying just to churches and religious orders, the exemption now applies to *all* for-profit or nonprofit employers that assert an objection to contraception based on their religious beliefs. Women employees of these employers now can be required to pay for their contraception or, if they cannot, go without.

43.    The 2017 Interim Final Rules also expand the *reason* the exemption may be claimed. The new regulations create an exemption for all employers, except those that are publicly traded, that have *moral* objections to contraception.  These employers too can deny their women employees insurance coverage for contraception.

44.    Furthermore, the new regulations significantly cut back the previous accommodation that allowed women who worked for religiously affiliated non-profits or closely held for-profit corporations to obtain contraception at no out-of-pocket cost. Most significantly,

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

14

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

the accommodation is entirely voluntary to exempt employers; if an employer that qualifies for an exemption declines to seek the accommodation, it may ignore it. The new rules undercut the previous system whereby women employees of objecting employers nevertheless were entitled to obtain insurance coverage of contraception from the insurance carrier or third-party administrator, at no cost to their employer.

45.     Further, the expanded exemption also applies to private institutions of higher education that issue student health plans, where they object to contraception for religious or moral reasons. These institutions may single out contraception, among all of their male and female students' health care needs, for denial of coverage. For these institutions, providing an accommodation that permits their female students to maintain insurance coverage for their contraception at no cost to the institution is entirely voluntary.[7]

46.     The first set of 2017 Interim Final Rules issued by HHS, DOL, and Treasury, Document 2017-21851 (scheduled to be published in the Federal Register on October 13, 2017), is entitled "Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act" (hereinafter Religious IFRs).[8] As stated, the Religious IFRs make the religious exemption available to *any* objecting entity that claims to object to establishing, maintaining, providing, or arranging coverage, payments, or a plan that provides coverage or payments for some or all contraceptive services based on its sincerely held religious beliefs. Religious IFRs at 162 (45 C.F.R. § 147.132(a)(2)).

---

[7] State laws requiring fully-insured plans to provide access to contraceptive coverage have not been displaced by the new rules. *See infra* ¶ 69.

[8] https://s3.amazonaws.com/public-inspection.federalregister.gov/2017-21851.pdf.  The Religious IFRs are attached to this Complaint as Exhibit A.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

15

47.     The second set of 2017 Interim Final Rules, Document 2017-21852 (scheduled to be published in the Federal Register on October 13, 2017), is entitled "Moral Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act" (hereinafter Moral IFRs).[9] The Moral IFRs create a moral exemption from the requirement to cover contraceptive services available to any non-profit entity, for-profit entity with no publicly-traded ownership interests, institution of higher education, or issuer that so objects based on its "sincerely held moral convictions." Moral IFRs at 25, 99 (45 C.F.R. § 147.133(a)(2)).

48.     On October 6, 2017, HRSA also updated its "Women's Preventive Services Guidelines" (hereinafter 2017 Updated Guidelines) to provide that "[t]hese Guidelines do not provide for or support the requirement of coverage or payments for contraceptive services with respect to a group health plan established or maintained by an objecting organization, or health insurance coverage offered or arranged by an objecting organization" as set forth in the moral and religious IFRs set forth above.   HRSA, Women's Preventive Services Guidelines (October 2017), *available at* https://www.hrsa.gov/womens-guidelines/index.html (last visited October 6, 2017).[10] The Guidelines' support of the recommendation to provide coverage without cost sharing of "[a]ll Food and Drug Administration approved contraceptive methods, sterilization procedures, and patient education and counseling for all women with reproductive capacity" is otherwise unaffected. *Id.*

---

[9] https://s3.amazonaws.com/public-inspection.federalregister.gov/2017-21852.pdf. The Moral IFRs are attached to this Complaint as Exhibit B.

[10] The 2017 Updated Guidelines are attached to this Complaint as Exhibit C.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

16

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

49.     The 2017 Interim Final Rules and 2017 Updated Guidelines vastly expand the exemption from the contraception coverage requirement previously available only to religious employers to include any "objecting organization," which is defined to include any other kind of entity other than a government employer. Under the 2017 Interim Final Rules and 2017 Updated Guidelines, any entity that "objects to establishing, maintaining, providing, offering, or arranging (as applicable) for coverage, payments, or a plan that provides coverage or payments for some or all contraceptive services" based on "religious beliefs," or any similar nonprofit or for-profit entity with no publically traded ownership interests based on "moral convictions" is completely exempt from the contraceptive mandate.

50.     The 2017 Interim Final Rules and 2017 Updated Guidelines make the accommodation process—which provided a mechanism to ensure women still had access to contraceptive coverage at no cost to the employer—entirely optional for all objecting entities entitled to exemption.

51.     The 2017 Interim Final Rules provide that "exempt entities will not be required to comply with a self-certification process." Religious IFRs at 61; *see also id*. at 162 (45 C.F.R. § 147.132(a)(2)). A company that wants to take advantage of the exemption need not certify that its owners have a religious or moral objection to contraception. It merely needs to drop or omit contraception coverage from its plan's terms and comply with other applicable law.

52.     The 2017 Interim Final Rules and 2017 Updated Guidelines are substantive changes that were issued prior to the passing of any notice and comment period. The Departments cited statutory general rulemaking authority as the basis for foregoing notice and

comment. Generic grants of rulemaking authority do not permit the denial of public participation required by the APA.

53.     The Departments are not subject to any court order or statutory deadline requiring them to place the Interim Final Rules into effect without consideration of public comments on the changes they wrought.

**D.     Injuries to the State and Its Residents**

54.     Washington has standing to bring this action because Defendant's 2017 Interim Final Rules and Updated 2017 Guidelines will cause immediate and substantial harm to the State's quasi-sovereign, proprietary and *parens patriae* interests.

55.     The State's quasi-sovereign interest in protecting the health and well-being of its residents includes ensuring that its residents have access to affordable contraception and can make personal, private decisions about their reproductive health and family planning unfettered by their employers.  Indeed, the State's has declared its interest in protecting individuals' "fundamental right to choose or refuse birth control" through statute. Wash. Rev. Code § 9.02.100.

56.     Eliminating the requirement for coverage of contraception services by employer-and higher education-sponsored health plans will also cause harm to Washington citizens, whom the State represents through its *parens patriae* authority.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

18

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

57.     Implementation of the 2017 Interim Final Rules and 2017 Updated HRSA Guidelines will affect the health and financial well-being of numerous women and families who reside in Washington.[11]

58.     Pregnancy is a medical condition that poses risks to, and consequences for, a woman.

59.     According to the American College of Obstetricians and Gynecologists, "[a]ccess to contraception is a medical necessity for women during approximately 30 years of their lives."[12]

60.     Virtually all (99%) sexually active women in the United States have used at least one contraceptive method at some point in their lifetime.

61.     Contraception use reduces the occurrence of unintended pregnancy and abortion.

62.     Contraceptive use also helps women and couples time and space their births, which helps to reduce the risk of poor birth outcomes, such as low birth weight, preterm birth, and small size for gestational age.

63.     Without insurance coverage, contraception costs can exceed $1,000 a year.

64.     Early research has also associated the contraception coverage requirement with a historic drop in the U.S. abortion rate that occurred in 2014.

---

[11] The available data focus on the impact of the provision or denial of contraception on women. However, the State recognizes that the denial of coverage for reproductive health care also affects people who do not identify as women, including some gender non-conforming people and some transgender men.

[12] ACOG Statement on Supreme Court Remand of *Zubik v. Burwell* (May 16, 2016), *available at* https://www.acog.org/About-ACOG/News-Room/Statements/2016/ACOG-Statement-on-Supreme-Court-Remand-of-Zubik-v-Burwell (last visited Oct. 9, 2017).

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

19

65.     A recent nonpartisan poll found that a majority of women would struggle to afford birth control if they had a co-pay.[13]

66.     Contraception coverage also impacts women's educations, careers, and economic standing. "The ability of women to participate equally in the economic and social life of the Nation has been facilitated by their ability to control their reproductive lives." *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 856 (1992). The availability of contraceptives has been associated with wage gains made by women since the advent of legal methods of birth control in the 1960s.

67.     Some contraceptive methods also are used for noncontraceptive purposes, such as treatment for acne, menstrual pain, and endometriosis.

68.     American women have saved approximately $1.4 billion per year on birth control pills alone since the ACA began requiring coverage of contraception benefits. Prior to enactment of the ACA, contraception accounted for between 30% and 44% of women's out-of-pocket expenses for health care costs. When the ACA required coverage for contraception, women's out-of-pocket costs declined 38% for birth control pills and 68% for IUDs.

69.     Washington has a Contraceptive Parity Rule that requires health plans that offer coverage of prescription drugs or devices to provide equal coverage for prescription contraceptives. WAC 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. This Rule, however, does not apply to employer self-funded insurance plans, which are governed by ERISA.

---

[13] https://www.scribd.com/document/342699692/PerryUndem-Gender-and-Birth-Control-Access-Report.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

20

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

70.     Removing the requirement for employer-sponsored plans to cover contraception will increase overall health care costs for Washington residents and increase their risk of poorer health outcomes.

71.     According to the most recent data from the U.S. Census Bureau, more than 2.4 million women of child-bearing age reside in Washington. Bureau of Labor Statistics data reveals that the total civilian workforce in Washington in 2016 was 3,639,000. Of those, approximately 1.7 million workers were women and approximately 1.3 million were of child-bearing age.

72.     Nationally, at least 61% of all covered employees are enrolled in employers' self-funded insurance plans.

73.     The 2017 Interim Final Rules and 2017 Updated Guidelines will impact up to 1.5 million insureds – plus their spouses and dependents – in Washington who receive insurance though their employers' self-funded plans. Considering only women of child-bearing age in the civilian workforce, and not spouses or daughters of other insureds, the new rules will impact up to 800,000 women in Washington.

74.     In addition to the impact on Washington residents, the implementation of 2017 Interim Final Rules and 2017 Updated Guidelines will increase the costs borne by the State as residents who lose coverage for contraception through their employer seek coverage through State-subsidized programs which provide subsidized contraceptive coverage, including Medicaid.

75.     Washington subsidizes family planning services through the Department of Health's Family Planning Program (Family Planning Program), a Title X Family Planning

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

21

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Program. *See* 42 U.S.C. § 300. This program provides for family planning, and it funds 13 agencies with 71 clinic sites throughout Washington that offer affordable contraceptive services, including birth control and long-acting reversible contraception. In 2016, health care providers funded through the Family Planning Program served 90,168 clients in over 125,316 clinic visits in Washington.

76.     Washington's Department of Health provides reproductive health services to individuals with incomes that are less than 251% of the Federal Poverty Level on a sliding fee scale. Washington State provides $8.8 million of funding to the Family Planning Program per year. Some women who lose coverage for contraception from their employers will be forced to seek contraception from the Family Planning Program.

77.     The Washington Health Care Authority administers the Take Charge Program which provides family planning services, including the provision of contraception, to uninsured individuals with income below 260% of the Federal Poverty Level. The Take Charge Program is authorized through a Section 1115 waiver from the Centers for Medicare and Medicaid Services as a research and demonstration project.  *See* 42 U.S.C. §1315. Take Charge is funded by state and federal dollars. Some women who lose coverage for contraception from their employers will be forced to seek contraception from the Take Charge Program.

78.     The reduction in employer-based coverage of contraception for women of reproductive capacity will result in more unintended pregnancies in Washington. Increased unintended pregnancies will cause Washington's Medicaid program to incur greater costs in covering prenatal care and delivery services for low-income women. Additionally, individuals

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

22

who increase the size of their family may become Medicaid eligible and cause the Medicaid program to incur greater costs.

79.     Washington's 2013 unintended pregnancy rate was 37%.

80.     Washington's Medicaid program provides coverage for prenatal care and delivery services for women at or below 193% of the Federal Poverty Level. *See* Wash. Admin. Code § 182-505-0115.

81.     In 2010, the cost of Medicaid-financed prenatal care and delivery in Washington was $220 million, or $10,124 per birth. Fifty-one percent of these Medicaid-covered births resulted from unintended pregnancies. Limiting access to contraceptives will likely increase the number of unplanned births that are publicly funded in Washington, and the State's costs will increase for each additional birth.

82.     In 2016, pregnancy-related expenses in Washington, including payments by both the Department of Health and Medicaid, were $426,513,331.

## V.     CLAIMS FOR RELIEF

### Count I
### Violation of the Fifth Amendment—Equal Protection

83.     The State realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

84.     The Due Process Clause of the Fifth Amendment to the United States Constitution requires equal protection of the laws.

85.     The ACA mandates that non-grandfathered insurance plans provide coverage for preventive care for men and women. The 2017 Interim Final Rules and 2017 Updated Guidelines carve out an exemption specific to women's reproductive health care. As a result of Defendants'

new regulations, generally only women, not men, may have coverage for reproductive health care denied based on their employer's religious or moral objection.

86.     The 2017 Interim Final Rules and 2017 Updated Guidelines intentionally interfere with women's ability to access necessary preventive care which is necessary to their equal participation in education, the workforce, and other elements of economic opportunity in our country.

87.     The 2017 Interim Final Rules and 2017 Updated Guidelines also perpetuate gender stereotypes.

88.     The 2017 Interim Final Rules and corresponding exemption in the 2017 Updated Guidelines do not serve an important governmental objective sufficient to justify the gender-based discrimination.

89.     By purporting to legally authorize employers, institutions of higher education, and other entities to deny only women the preventive health benefits that they need, the 2017 Interim Final Rules and the 2017 Updated HRSA Guidelines classify based on gender and therefore violate the Due Process Clause of the Fifth Amendment to the United States Constitution.

90.     Absent injunctive and declaratory relief with respect to the 2017 Interim Final Rules and 2017 Updated Guidelines, the State and its citizens will continue to be harmed by Defendants' illegal actions.

## Count II
## Violation of the First Amendment—Establishment Clause

91.     The State realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

24

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

92.     The Establishment Clause of the First Amendment prohibits the federal government from preferring one religion over another, and requiring people to bear the burdens of religions to which they do not belong.

93.     The Religious IFRs and the corresponding portion of the 2017 Updated Guidelines are intended to and have the effect of advancing, imposing, and endorsing certain religious interests. For example, they permit a for-profit business to impose the costs of its owners' anti-contraception beliefs on employees (and their dependents). Based on the religious beliefs of an employer or institution of higher education, the Religious IFRs deny women access to contraceptive coverage that the ACA would otherwise secure.

94.     The Religious IFRs allow employers to decide whether employees receive separate contraceptive coverage through the accommodation process, at no cost to the employers. Employers have no legitimate interest in injecting their religious beliefs into this independent method for providing contraceptive coverage.

95.     Through their actions, including those described above, Defendants have violated the Establishment Clause of the First Amendment.

96.     Absent injunctive and declaratory relief with respect to the 2017 Interim Final Rules and 2017 Updated Guidelines, the State and its residents will continue to be harmed by Defendants' illegal actions.

**Count III**
**Violation of the Administrative Procedure Act**
**Procedural Violations**

1.     The State realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

25

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

2.     The 2017 Interim Final Rules and 2017 Updated Guidelines have changed the substantive rights and obligations imposed by the Affordable Care Act and prior implementing regulations on employers, issuers, and others.

3.     The 2017 Interim Final Rules and 2017 Updated Guidelines constitute final agency action and are legislative rules within the meaning of the Administrative Procedure Act

4.     The 2017 Interim Final Rules and 2017 Updated Guidelines purport to take effect immediately, without the required 30-day waiting period between publication and effective date, without good cause for doing so.

5.     The 2017 Interim Final Rules and 2017 Updated Guidelines were adopted without observing the notice and comment procedures required by the Administrative Procedure Act, which include publishing the proposed rule, allowing an appropriate time for "interested persons [to have] an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation." 5 U.S.C. §§553(b), (c).

6.     The Defendants did not have good cause to forgo notice and comment rulemaking.

7.     Therefore, Defendants have taken agency action not in observance with procedures required by law, and the State is entitled to relief pursuant to 5 U.S.C. §§ 553 and 706(2)(D).

8.     Absent injunctive and declaratory relief with respect to the Interim Final Rules and 2017 Updated Guidelines, the State and its residents will continue to be harmed by Defendants' illegal actions.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

26

**Count IV**
**Violation of the Administrative Procedure Act**
**Arbitrary and Capricious Action**

9.      The State realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs.

10.      The 2017 Interim Final Rules and 2017 Updated Guidelines reverse a prior agency decision without providing a reasoned explanation for this change in policy.

11.      The 2017 Interim Final Rules and 2017 Updated Guidelines are not evidence-based or evidence-informed.

12.      Defendants' explanation for their decision to exempt any entity with religious or moral objections runs counter to the evidence submitted during the comment period for these 2017 Interim Final Rules and the predecessor rules.

13.      Thus, Defendants' issuance of the 2017 Interim Final Rules and 2017 Updated Guidelines was arbitrary and capricious within the meaning of 5 U.S.C. § 706(2)(A).

14.      Absent injunctive and declaratory relief with respect to the 2017 Interim Final Rules and 2017 Updated Guidelines, the State and its residents will continue to be harmed by Defendants' illegal actions.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

27

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

**Count V**
**Violation of the Administrative Procedure Act**
**Agency Action Not in Accordance With Law, Contrary to Constitutional Rights, and In Excess of Statutory Jurisdiction**
**(First Amendment to the United States Constitution,**
**Fifth Amendment to the United States Constitution,**
**Civil Rights Act, Pregnancy Discrimination Act, and**
**Affordable Care Act)**

15.     The State realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs.

16.     The APA requires that agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," "not in accordance with law" or "contrary to constitutional right" be held unlawful and set aside. 5 U.S.C. § 706(2).

17.     The 2017 Interim Final Rules and 2017 Updated Guidelines, which allow employers to choose whether their employees will receive coverage for contraception, are not in accordance with and in excess of statutory authority set forth in the ACA, which require coverage for preventive services for women and do not provide an exception for religious or moral objections. 42 U.S.C. § 300gg-13(a)(4).

18.     The expanded exemptions are not required by the Religious Freedom Restoration Act or any other provision of federal law.

19.     The 2017 Interim Final Rules and 2017 Updated Guidelines are contrary to the constitutional protections afforded by the First and Fifth Amendments, as described above.

20.     The 2017 Interim Final Rules and 2017 Updated Guidelines are not accordance with the Civil Rights Act, as amended by the Pregnancy Disability Act, which prohibits discrimination based on sex or capacity to be pregnant. 42 U.S.C. 2000e *et seq.* (Title VII).

21.    The 2017 Interim Final Rules and 2017 Updated Guidelines are not in accordance with provisions of the ACA that prohibits discrimination based on gender. 42 U.S.C. § 18116.

22.    The 2017 Interim Final Rules and 2017 Updated Guidelines are not in accordance with provisions of the ACA that prohibit the promulgation of any regulation that "[c]reates any unreasonable barrier to the ability of individuals to obtain appropriate medical care," "[i]mpedes timely access to health care services," or "[l]imits the availability of health care treatment for the full duration of a patient's medical needs." 42 U.S.C. § 18114.

23.    Absent injunctive and declaratory relief with respect to the 2017 Interim Final Rules and 2017 Updated Guidelines, the State and its residents will continue to be harmed by Defendants' illegal actions.

## IX.    PRAYER FOR RELIEF

Wherefore, the State of Washington prays that the Court:

a.    Declare that the 2017 Interim Final Rules and 2017 Updated Guidelines' exemptions for religious and moral objections are unauthorized by and contrary to the Constitution and laws of the United States;

b.    Declare that the 2017 Interim Final Rules and 2017 Updated Guidelines were not promulgated in conformance with the procedures required by the Administrative Procedure Act;

c.    Declare that the 2017 Interim Final Rules and 2017 Updated Guidelines are arbitrary and capricious and short of statutory right;

d.    Issue Preliminary and Permanent Injunctions enjoining Defendants from implementing or enforcing the 2017 Interim Final Rules and the 2017 Updated Guidelines' expanded exemptions for religious and moral objections;

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

29

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

e.      Award Washington its costs and reasonable attorney fees; and

f.      Award such additional relief as the interests of justice may require.

DATED this 9th day of October, 2017.

Respectfully submitted,

*/s/ Jeffrey T. Sprung*
ROBERT W. FERGUSON, WSBA #26004
Attorney General
JEFFREY T. SPRUNG, WSBA #23607
ALICIA O. YOUNG, WSBA #35553
CYNTHIA L. ALEXANDER, WSBA #46019
AUDREY L. UDASHEN, WSBA #42868
Assistant Attorneys General
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744
JeffS2@atg.wa.gov
AliciaO@atg.wa.gov
CynthiaA@atg.wa.gov
AudreyU@atg.wa.gov

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

30