The Honorable Ronald B. Leighton

1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

9   STATE OF WASHINGTON,

No. 2:17-cv-01510-RBL

10                          Plaintiff,

11   v.

**DEFENDANTS' MOTION TO**
**DISMISS OR FOR SUMMARY**
**JUDGMENT**

12   DONALD TRUMP, in his official capacity as
President of the United States of America;
13   ERIC D. HARGAN, in his official capacity as
Acting Secretary of Health and Human
14   Services; U.S DEPARTMENT OF HEALTH
AND HUMAN SERVICES; STEVEN T.
15   MNUCHIN, in his official capacity as
Secretary of the Treasury, U.S.
16   DEPARTMENT OF TREASURY; R.
ALEXANDER ACOSTA, in his official
17   capacity as Secretary of Labor; and UNITED
STATES DEPARTMENT OF LABOR,

NOTE ON MOTION CALENDAR:
January 5, 2018

18                          Defendants.

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 3

ARGUMENT ........................................................................................................... 9

    I.    Plaintiff Lacks Standing. .............................................................. 9

    II.   The Rules Do Not Violate the Fifth Amendment's Equal Protection
        Principle. ................................................................................... 13

    III.  The Rules Do Not Violate the Establishment Clause. ............................. 16

        A.   The Rules Have a Secular Purpose. .................................................... 17

        B.   The Effect of the Rules Is Neither to Advance Nor Inhibit
            Religion.. .......................................................................................... 18

        C.   The Rules Do Not Foster Excessive Government Entanglement
            with Religion. .................................................................................... 19

    IV.  Plaintiff's Procedural Administrative Procedure Act Claim
        is Meritless. .................................................................................. 20

        A.   The Agencies Issued the Rules Pursuant to Express Statutory
            Authority. .......................................................................................... 20

        B.   The Agencies Had Good Cause to Issue Interim Final Rules. ........... 21

        C.   If the Lack of Formal Notice-and-Comment Was an Error, It
            Was Harmless. .................................................................................. 24

    V.   The Rules Are Not Arbitrary or Capricious. ............................................. 25

    VI.  The Rules Are Valid Under the APA Because They Are in Accordance
        with Law, and Not In Excess of Statutory Authority. ............................... 28

        A.   The Rules Are Not In Excess of Statutory Authority. . ..................... 29

        B.   The Rules Otherwise Comply with the ACA. ................................... 32

        C.   The Rules Do Not Violate Title VII. ................................................. 34

        D.   RFRA Requires the Religious Exemption Rule. ............................... 36

        E.   At a Minimum, the Religious Exemption Rule was a Permissible
            Response to the Substantial Burden on Religious Exercise Imposed
            by the Mandate. ................................................................................ 38

CONCLUSION ....................................................................................................... 40

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - i
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491

# TABLE OF AUTHORITIES

**Cases**

*Advocate Health Care Network v. Stapleton*,
   137 S. Ct. 1652 (2017) ............................................................ 37
*Agostini v. Felton*,
   521 U.S. 203 (1997) ................................................................ 19
*Alfred L. Snapp & Son, Inc. v. Puerto Rico*,
   458 U.S. 592 (1982) ........................................................ 2, 12, 13
*Am. Family Ass'n v. City & Cty. of San Francisco*,
   277 F.3d 1114 (9th Cir. 2002) ................................................. 18
*Am. Fed'n of Gov't Emps., AFL-CIO v. Block*,
   655 F.2d 1153 (D.C. Cir. 1981) ............................................... 22
*Archdiocese of St. Louis v. Burwell*,
   28 F. Supp. 3d 944 (E.D. Mo. 2014) ......................................... 5
*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................ 10
*Asiana Airlines v. FAA*,
   134 F.3d 393 (D.C. Cir. 1998) ................................................. 21
*Associated Builders & Contractors of Tex., Inc. v. NLRB*,
   826 F.3d 215 (5th Cir. 2016) ................................................... 26
*Barnes-Wallace v. City of San Diego*,
   704 F.3d 1067 (9th Cir. 2012) ................................................. 19
*Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*,
   512 U.S. 687 (1994) ................................................................ 16
*Bolla v. McClain*,
   469 F. App'x 531 (9th Cir. 2012) ............................................ 32
*Bowen v. Kendrick*,
   487 U.S. 589 (1988) ................................................................ 17
*Bowman Transp., Inc. v. Ark. Best Freight Sys.*,
   419 U.S. 281 (1974) ................................................................ 25
*Burwell v. Hobby Lobby Stores, Inc.*,
   134 S. Ct. 2751 (2014) .................................................... passim
*Catholic League for Religious & Civil Rights v. City & Cty. of San Francisco*,
   624 F.3d 1043 (9th Cir. 2010) ................................................. 10
*Chevron U.S.A. v. Nat'l Res. Def. Council*,
   467 U.S. 837 (1984) ................................................................ 31
*Citizens to Pres. Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971) ........................................................... 25, 28
*City of Rohnert Park v. Harris*,
   601 F.2d 1040 (9th Cir. 1979) ................................................. 11
*Coalition for Parity, Inc. v. Sebelius*,
   709 F. Supp. 2d 10 (D.D.C. 2010) ........................................... 21
*Conservation Law Found. v. Evans*,
   360 F.3d 21 (1st Cir. 2004) ..................................................... 23
*Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*,
   483 U.S. 327 (1987) ................................................. 16, 17, 18, 19
*Cutter v. Wilkinson*,
   544 U.S. 709 (2005) ........................................................... 15, 16
*Doe v. Bolton*,
   410 U.S. 179 (1973) ................................................................ 16
*E.E.O.C. v. Metal Serv. Co.*,
   892 F.2d 341 (3d Cir. 1990) .................................................... 34

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - i
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 616-8491**

*Emeldi v. Univ. of Oregon,*
    698 F.3d 715 (9th Cir. 2012) ......................................................................... 32
*Massachusetts v. EPA,*
    549 U.S. 497 (2007) ................................................................................. 12, 13
*Estate of Thornton v. Caldor, Inc.,*
    472 U.S. 703 (1985) ................................................................................. 19, 20
*FCC v. Fox Television Studios, Inc.,*
    556 U.S. 502 (2009) ......................................................................................... 25
*Frank v. United Airlines, Inc.,*
    216 F.3d 845 (9th Cir. 2000) ......................................................................... 35
*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
    546 U.S. 418 (2006) ......................................................................................... 36
*Harris v. McRae,*
    448 U.S. 297 (1980) ......................................................................................... 33
*Hawaii v. Trump,*
    859 F.3d 741 (9th Cir. 2017), *vacated as moot,* 874 F.3d 1112 (9th Cir. 2017) ............. 13
*Heller v. Doe,*
    509 U.S. 312 (1993) ......................................................................................... 14
*Hobbie v. Unemployment Appeals Comm'n of Fla.,*
    480 U.S. 136 (1987) ......................................................................................... 19
*Idaho Farm Bureau Fed'n v. Babbitt,*
    58 F.3d 1392 (9th Cir. 1995) ......................................................................... 24
*In Re Union Pac. R.R. Emp't Practices Litig.,*
    479 F.3d 936 (8th Cir. 2007) ......................................................................... 35
*Johnson v. Poway Unified Sch. Dist.,*
    658 F.3d 954 (9th Cir. 2011) ......................................................................... 17
*Kowalski v. Tesmer,*
    543 U.S. 125 (2004) ......................................................................................... 13
*Lee v. Weisman,*
    505 U.S. 577 (1992) ......................................................................................... 19
*Lemon v. Kurtzman,*
    403 U.S. 602 (1971) ................................................................................. 17, 18
*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ................................................................................... 9, 10
*Lyng v. Int'l Union,*
    485 U.S. 360 (1988) ......................................................................................... 15
*Massachusetts v. Mellon,*
    262 U.S. 447 (1923) ......................................................................................... 12
*Mayweathers v. Newland,*
    314 F.3d 1062 (9th Cir. 2002) ................................................................... 18, 19
*Methodist Hosp. of Sacramento v. Shalala,*
    38 F.3d 1225 (D.C. Cir. 1994) ......................................................................... 21
*Mid-Tex Elec. Co-op., Inc. v. FERC,*
    822 F.2d 1123 (D.C. Cir. 1987) ................................................................. 23, 24
*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ........................................................................................... 25
*Motor Vehicles Mfrs. Ass'n of U.S., Inc. v. Ruckleshaus,*
    719 F.2d 1159 (D.C. Cir. 1983) ..................................................................... 25
*Myers v. United States,*
    272 U.S. 52 (1926) ........................................................................................... 26
*Nat'l Ass'n of Home Builders v. Defs. of Wildlife,*
    551 U.S. 644 (2007) ......................................................................................... 40
*Nat'l Women, Infants, & Children Grocers Ass'n v. Food & Nutrition Serv.,*
    416 F. Supp. 2d 92 (D.D.C. 2006) ............................................................. 23, 24

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - ii
*State of Washington, et al. v. Trump, et al.,* No. 2:17-cv-01510 (RBL)

**U.S. DEPARTMENT OF JUSTICE**
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491

*New York v. United States,*
    505 U.S. 144 (1992) ................................................................................................. 10

*Oregon v. Mitchell,*
    400 U.S. 112 (1970) ................................................................................................. 10

*Paulsen v. Daniels,*
    413 F.3d 999 (9th Cir. 2005) ................................................................................... 24

*Pennsylvania v. Kleppe,*
    533 F.2d 668 (D.C. Cir. 1976) ................................................................................ 10

*Pennsylvania v. New Jersey,*
    426 U.S. 660 (1976) ................................................................................................. 12

*People ex rel. Hartigan v. Cheney,*
    726 F. Supp. 219 (C.D. Ill. 1989) ........................................................................... 11

*Personnel Adm'r of Mass. v. Feeney,*
    442 U.S. 256 (1979) ............................................................................................ 13, 15

*Petry v. Block,*
    737 F.2d 1193 (D.C. Cir. 1984) .............................................................................. 23

*Priests for Life v. U.S. Dep't of Health & Human Servs.,*
    772 F.3d 229 (D.C. Cir. 2014) *vacated and remanded by Zubik v. Burwell,*
    136 S. Ct. 1557 (2016)  ...................................................................................... 22, 23

*Raines v. Byrd,*
    521 U.S. 811 (1997) ................................................................................................. 10

*Real Alternatives, Inc. v. Burwell,*
    150 F. Supp. 3d 419 (M.D. Pa. 2015) ..................................................................... 20

*Republic Steel Corp. v. Costle,*
    621 F.2d 797 (6th Cir. 1980) ................................................................................... 23

*Ricci v. DeStefano,*
    557 U.S. 557 (2009) ............................................................................................ 34, 39

*Riverbend Farms, Inc. v. Madigan,*
    958 F.2d 1479 (9th Cir. 1992) ................................................................................. 24

*Sagebrush Rebellion, Inc. v. Hodel,*
    790 F.2d 760 (9th Cir. 1986) ................................................................................... 24

*Serv. Emps. Int'l Union, Local 102 v. Cty. of San Diego,*
    60 F.3d 1346 (9th Cir. 1994) ................................................................................... 22

*Sherley v. Sebelius,*
    689 F.3d 776 (D.C. Cir. 2012) ................................................................................ 26

*Shinseki v. Sanders,*
    556 U.S. 396 (2009) ................................................................................................. 24

*South Carolina v. Katzenbach,*
    383 U.S. 301 (1966) ................................................................................................. 10

*Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.,*
    135 S. Ct. 2507 (2015) ............................................................................................. 34

*Texas Monthly, Inc. v. Bullock,*
    489 U.S. 1 (1989) ................................................................................................ 19, 20

*Tri-Valley Cares v. U.S. Dep't of Energy,*
    671 F.3d 1113 (9th Cir. 2012) ................................................................................. 37

*United States v. Dumas,*
    64 F.3d 1427 (9th Cir. 1995) ................................................................................... 15

*United States v. Seeger,*
    380 U.S. 163 (1965) ................................................................................................. 16

*United States v. Thoms,*
    684 F.3d 893 (9th Cir. 2012) ................................................................................... 10

*United States v. Windsor,*
    133 S. Ct. 2675 (2013) ............................................................................................. 13

*Universal Health Servs. of McAllen, Inc. v. Sullivan,*
    770 F. Supp. 704 (D.D.C. 1991) ............................................................................. 23

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 616-8491**

*Walz v. Tax Comm'n of N.Y.*,
  397 U.S. 664 (1970) .............................................................................. 17
*Wash. Legal Found. v. Alexander*,
  984 F.2d 483 (D.C. Cir. 1993) ............................................................. 34
*Washington v. Trump*,
  847 F.3d 1151 (9th Cir. 2017) *cert. denied*, 2017 WL 3224674 (Nov. 13, 2017) .......... 13
*Welsh v. United States*,
  398 U.S. 333 (1970) .............................................................................. 15
*Wengler v. Druggists Mut. Ins. Co.*,
  446 U.S. 142 (1980) .............................................................................. 13
*Wheaton Coll.* v. *Burwell*,
  134 S. Ct. 2806 (2014) ........................................................................... 7
*Whitman v. Am. Trucking Assns.*,
  *Inc.*, 531 U.S. 457 (2001) ................................................................... 33
*Wyoming v. U.S. Dep't of the Interior*,
  674 F.3d 1220 (10th Cir. 2012) ............................................................. 10
*Zorach v. Clauson*,
  343 U.S. 306 (1952) ......................................................................... 16, 17
*Zubik v. Burwell*,
  136 S. Ct. 1557 (2016) .................................................................... 1, 7, 22

**Statutes**

5 U.S.C. § 553 ................................................................................... 20, 21
5 U.S.C. § 704 ...................................................................................... 34
5 U.S.C. § 706 ............................................................................. 24, 25, 28
20 U.S.C. 1681 ..................................................................................... 32
26 U.S.C. § 501 ...................................................................................... 4
26 U.S.C. § 9833 ............................................................................... 20, 29
29 U.S.C. § 1191c .............................................................................. 20, 29
42 U.S.C. § 300gg-13 ...................................................................... *passim*
42 U.S.C. § 300gg-92 ........................................................................ 20, 29
42 U.S.C. § 2000bb–1 ............................................................................ 36
42 U.S.C. § 2000bb-3 ....................................................................... 33, 35
42 U.S.C. § 2000e-2 .............................................................................. 34
42 U.S.C. § 18114 ............................................................................ 32, 33
42 U.S.C. § 18116 ............................................................................ 32, 33
42 U.S.C. § 18021 .................................................................................. 33
42 U.S.C. § 18022 .................................................................................. 33
Pub. L. No. 111–148, 124 Stat. 119 (2010) .................................................. 3
Pub. L. No. 111–152, 124 Stat. 1029 (2010) ................................................ 3
Revised Code of Washington (RCW) 48.43.065 ........................................ 16, 19

**Regulations**

26 C.F.R. § 54.9815–1251 ......................................................................... 4
26 C.F.R § 54.9815-2713A ........................................................................ 9
29 C.F.R. § 2590.715–1251 ........................................................................ 4
29 C.F.R § 2590.715-2713A ....................................................................... 9
45 C.F.R. § 92.2 ................................................................................... 33
45 C.F.R. § 147.131 ................................................................................ 9
45 C.F.R. § 147.132 ............................................................................. 8, 9
45 C.F.R. § 147.133 ............................................................................. 8, 9
45 C.F.R. § 147.140 ................................................................................ 4
75 Fed. Reg. 34,538 (June 17, 2010) ..................................................... 4, 37

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - iv
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 616-8491**

75 Fed. Reg. 41,726 (July 19, 2010) .............................................................. 20, 24
76 Fed. Reg. 46,621 (Aug. 3, 2011) ............................................................... *passim*
77 Fed. Reg. 8,725 (Feb. 15, 2012) ...................................................................... 4
77 Fed. Reg. 16,501 (Mar. 21, 2012) ............................................................. 5, 24
78 Fed. Reg. 8,458 (Feb. 6, 2013) .............................................................. 5, 9, 14
78 Fed. Reg. 39,870 (July 2, 2013) ............................................................ 5, 6, 31
79 Fed. Reg. 51,092 (Aug. 27, 2014) ................................................................... 7
79 Fed. Reg. 51,118 (Aug. 27, 2014) ................................................................... 7
80 Fed. Reg. 41,318 (July 14, 2015) ..................................................................... 7
81 Fed. Reg. 47,741 (July 22, 2016) ............................................................... 7, 24
Exec. Order No. 13,798, 82 Fed. Reg. 21,675 (May 4, 2017) ............................... 8
82 Fed. Reg. 47,792 (Oct. 13, 2017) .............................................................. *passim*
82 Fed. Reg. 47,838 (Oct. 13, 2017) .............................................................. *passim*

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - v
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 616-8491**

1

## **INTRODUCTION**

2      This case is about religious liberty and freedom of conscience.  In 2010, as part of the

3 Affordable Care Act ("ACA"), Congress enacted a law requiring certain employers to cover

4 recommended preventive services without cost sharing, including certain women's

5 preventive services, as provided by the Health Resources and Services Administration

6 ("HRSA"), an agency within the Department of Health and Human Services ("HHS"), in

7 guidelines.  The law does not mention contraceptive coverage.  But HRSA's guidelines

8 required coverage of all Food and Drug Administration ("FDA")-approved contraceptives

9 without cost sharing.  At the same time, the government recognized that some employers hold

10 sincere religious objections to providing coverage for contraceptives, especially certain

11 contraceptives the employers considered to be abortifacients, but decided to exempt only a

12 fraction of those employers—certain churches and their integrated auxiliaries—from the

13 requirement.  Other religious employers remained subject to the contraceptive mandate

14 ("Mandate") and were left either to violate their sincerely held religious beliefs or to be

15 subjected to significant fines.

16      Years of litigation in dozens of cases followed.  In *Burwell v. Hobby Lobby Stores,*

17 *Inc*., the Supreme Court held that the "contraceptive mandate imposes a substantial burden

18 on the exercise of religion" that was unlawful under the Religious Freedom Restoration Act

19 ("RFRA").  134 S. Ct. 2751, 2775, 2779, 2785 (2014).  Rather than extend the church

20 exemption, however, the Departments of HHS, Labor, and the Treasury ("the Agencies")

21 tried "accommodating" certain religious objectors who did not qualify for that exemption.

22 That decision triggered a new round of litigation that generated decisions in nine federal

23 courts of appeals.  Ultimately, the Supreme Court vacated those decisions and instructed the

24 courts of appeals to give the parties time to try to resolve their differences.  *See Zubik v.*

25 *Burwell*, 136 S. Ct. 1557, 1560 (2016).

26      On October 6, 2017, in an effort to address serious religious and moral objections and

27 finally bring the litigation to a close, the Agencies issued interim final rules ("IFRs") that

28

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 1
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 616-8491**

allow HRSA to keep the Mandate in place, but exempt religious and moral objectors from having to include contraceptive coverage to which they object—which could be some or all contraceptives—in health plans offered to their employees. *See* Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the ACA, 82 Fed. Reg. 47,792 (Oct. 13, 2017) (the "Religious Exemption Rule"); Moral Exemptions and Accommodations for Coverage of Certain Preventive Services Under the ACA, 82 Fed. Reg. 47,838 (Oct. 13, 2017) (the "Moral Exemption Rule") (collectively, "the Rules").

The State of Washington seeks to reverse this considered decision, demanding that religious and moral objectors facilitate the provision of services in violation of their sincerely held beliefs. Plaintiff alleges that the Rules violate the Equal Protection Clause, the Establishment Clause, the Administrative Procedure Act, the Civil Rights Act, and the Affordable Care Act. It contends that the Rules interfere with the ACA's "require[ment]" that employees "receive coverage for contraception." Compl. ¶ 17, p. 28[1], ECF No. 1. Those positions, if adopted, could apply equally to sweep away the longstanding exemption for churches and their integrated auxiliaries, exposing churches to the Mandate for the first time.

This Court should not reach these merits questions at all, because the Plaintiff lacks standing. The Plaintiff seeks to enjoin Rules that do not apply to it and that do not affect any identified state residents, and it is black-letter law that a state cannot assert the rights of its citizens against the federal government. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 610 n.16 (1982).

And even if Plaintiff did have standing, it would not have a valid claim for relief. The federal government made a lawful policy choice to protect religious liberty and moral convictions in this healthcare context. The Rules do not draw distinctions based on sex, but on the presence or absence of a sincere religious or moral objection. And it is settled law that the government may accommodate religion without running afoul of the Establishment

---

[1] The page number is provided because there are paragraph numbering errors in the State's Complaint; the paragraph numbering restarts after paragraph 96. *See* Compl. at p. 25.

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 2
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491

Clause; the Rules do not advance religion, but instead relieve a burden on religious practice. This case is not about "promot[ing] certain religious and moral views" or "permitt[ing] a for-profit business to impose the costs of its owners' anti-contraception beliefs on employees (and their dependents)." Compl. ¶¶ 1, 93, pp. 1, 25. It is about protecting a narrow class of sincere religious and moral objectors from being forced to facilitate practices in conflict with their beliefs. In addition, the Rules did not require yet another round of notice and comment prior to implementation, and they are not arbitrary, as they alleviate a substantial burden on religion and help resolve years of litigation and dozens of cases. Finally, the ACA and RFRA provide firm statutory authority for the Rules.

The broad position that Plaintiff advocates would undermine religious exercise and freedom of conscience, while the Mandate remains in place for the vast majority of employers. The Court should dismiss this action, or enter summary judgment for Defendants.

## BACKGROUND

In March 2010, Congress enacted the ACA. *See* Patient Protection and Affordable Care Act, Pub. L. No. 111–148, 124 Stat. 119 (2010), *as amended by* Pub. L. No. 111–152, 124 Stat. 1029 (2010). Section 1001 of the ACA added Section 2713 to the Public Health Service Act ("PHSA"). *See* 42 U.S.C. § 300gg-13. That provision requires group health plans and health insurance issuers that offer group or individual health coverage to provide coverage for certain preventive services without cost-sharing. *Id.* These include, "with respect to women, such additional preventive care and screenings not described in [Section 300gg-13(a)(1)] as provided for in comprehensive guidelines supported by [HRSA]." *Id.* § 300gg-13(a)(4). Congress did not require HRSA to include contraceptive services, and the ACA does not mention such services.

Congress exempted tens of millions of employees from the preventive services provision, many because their employers sponsor "grandfathered plans," which are those "in which an individual was enrolled on March 23, 2010" that also comply with certain additional

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 3
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 616-8491**

regulations.  *See* 26 C.F.R. § 54.9815–1251(a); 29 C.F.R. § 2590.715–1251(a); 45 C.F.R. § 147.140(a).  Congress required grandfathered plans to cover certain services deemed "particularly significant," including coverage of pre-existing conditions and allowing dependents to remain on plans until age 26, but did not require that those plans include coverage of preventive services.  75 Fed. Reg. 34,538, 34,540 (June 17, 2010).

On August 1, 2011, HRSA adopted guidelines that defined as covered preventive services the full range of FDA-approved contraceptive methods, sterilization procedures, and patient education and counseling for women with reproductive capacity.  *See* HRSA, Women's Preventive Services: Required Health Plan Coverage Guidelines ("Guidelines"), Administrative Record ("AR") CD1 at 56-57.[2]  Simultaneously, the Agencies issued a second set of IFRs providing an exemption for certain religious employers.  *See* Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services Under the PPACA, 76 Fed. Reg. 46,621, 46,625 (Aug. 3, 2011), AR CD9, Doc. 9.  The IFRs limited the exemption to "churches, their integrated auxiliaries, and conventions or associations of churches," as well as "the exclusively religious activities of any religious order," that are exempt from taxation under 26 U.S.C. § 501(a), where  "(1) [t]he inculcation of religious values is the purpose of the organization; (2) [t]he organization primarily employs persons who share the religious tenets of the organization; [and] (3) [t]he organization serves primarily persons who share the religious tenets of the organization."  *Id*. at 46,626.  The Agencies requested comments on the amended IFRs and specifically on the definition of a "religious employer."  76 Fed. Reg. at 46,623.

After considering thousands of comments, AR CD1 at 1510-2249, CD2 at 2250-181059, the Agencies issued final regulations that adopted the IFRs' definition of a religious employer.  77 Fed. Reg. 8,725, 8,726–27 (Feb. 15, 2012).  Around the same time, the Agencies created a temporary enforcement safe harbor for plans sponsored by certain non-

---

[2] Citations herein to the Administrative Record include citations to the specific disc in DVD format (CD1-CD9) that contains the cited material.  The Administrative Record is being filed contemporaneously with this motion.

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 4
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 616-8491**

profit organizations with religious objections to contraceptive coverage that would not qualify as exempt religious employers (and for any associated group health insurance coverage).[3]

The safe harbor did not extend to for-profit companies with religious objections to providing coverage for contraceptive services or employers of any kind with moral objections to providing such coverage.  Dozens of organizations and individuals filed lawsuits challenging the Mandate.  And Courts around the country began to issue injunctions against the Mandate.  *See Archdiocese of St. Louis v. Burwell*, 28 F. Supp. 3d 944, 954 (E.D. Mo. 2014) (citing cases).

As part of their continuing attempt to resolve religious objections, the Agencies issued an advance notice of proposed rulemaking ("ANPRM") in March 2012 and a Notice of Proposed Rulemaking ("NPRM") in February 2013.  77 Fed. Reg. 16,501 (Mar. 21, 2012); 78 Fed. Reg. 8,456 (Feb. 6, 2013).  The Agencies' goal was to address alternatives for providing women access to contraceptive services without cost-sharing and for accommodating religious organizations' liberty interests, *id.* at 16,501–03, and to give "an early opportunity for any interested stakeholder to provide advice and input into the policy development relating to the accommodation to be made" in amendments to the regulations, *id.* at 16,503.

After receiving over 400,000 comments, AR CD6 at 25414-289805, 289806-373095, the Agencies published final rules.  78 Fed. Reg. 39,870 (July 2, 2013).  These rules simplified and expanded the religious employer exemption by defining a "religious employer" to be "an organization that is organized and operates as a nonprofit entity and is referred to in section 6033(a)(3)(A)(i) or (a)(3)(A)(iii) of the Internal Revenue Code of 1986,

---

[3] On February 10, 2012, HHS issued a guidance describing the safe harbor and stating that the Agencies would wait one year before enforcing the mandate against certain non-exempt religious organizations.  *See* HHS, Guidance on the Temporary Enforcement Safe Harbor (Feb. 10, 2012), AR CD1 at 58-63.  This guidance was later reissued without changing the substance of the policy, in order to extend the safe harbor for an additional year.  *See* HHS, Guidance on the Temporary Enforcement Safe Harbor, at 1 n.1 & 3 (June 28, 2013), AR CD4 at 263, 265.

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 5
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491

as amended." *Id.* at 39,896.  That Code provision refers *only* to churches, their integrated auxiliaries, and conventions or associations of churches, and the exclusively religious activities of any religious order.  *Id.*

But the 2013 final rules did not extend the religious employer exemption to all objecting organizations.  Instead, they established an "accommodation" for group health plans established or maintained by nonprofit organizations that met the definition of "eligible organizations."  *Id.* at 39,874–80, 39,896.  Under this process, an eligible organization was not required "to contract, arrange, pay, or refer for contraceptive coverage" to which it had religious objections, *id.* at 39,874, if it completed a self-certification stating that it was an eligible organization and provided a copy of that form to its issuer or third-party administrator ("TPA").  *Id.* at 39,878–79.  The organization's health insurance issuer or TPA would then be required to provide or arrange payments to participants and beneficiaries for contraceptive services without cost sharing, premium, fee, or other charge to participants or beneficiaries, or to the eligible organization or its plan.[4]  *See id.* at 39,875–80.

The 2013 final rules did not resolve the litigation challenging the Mandate.  In 2014, the Supreme Court held that, at least as applied to closely-held for-profit corporations with religious objections to providing contraceptive coverage, the Mandate violated RFRA. *Hobby Lobby*, 134 S. Ct. at 2775.  The Court explained that the "contraceptive mandate substantially burden[ed] the exercise of religion" by those employers because it put them to the choice of violating their sincerely held religious beliefs or facing significant fines.  *Id.* at 2757.  The Court also held that applying the Mandate to the plaintiffs failed the least restrictive means test, because the accommodation was a less restrictive alternative to applying the Mandate directly.  *See id.* at 2779–80.  The Court cautioned that it was not deciding "whether an approach of this type complies with RFRA for purposes of all religious claims."  *Id.* at 2782.

---

[4] For self-insured plans, any costs incurred by a TPA could be reimbursed through an adjustment to Federally-facilitated Exchange ("FFE") user fees.  *See* 78 Fed. Reg. at 39,880.

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 6
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 616-8491**

Less than a week later, the Court granted interim relief in a case involving Wheaton College, a non-profit employer that sincerely believed that the accommodation process rendered it complicit in providing contraceptive coverage. *See Wheaton Coll.* v. *Burwell*, 134 S. Ct. 2806, 2808 (2014). The Court identified an alternative form of accommodation for Wheaton College whereby the employer could notify the government—instead of its insurer or TPA—of the employer's religious objections. *Id.* at 2807.

In light of that order, the Agencies issued another set of IFRs to augment the regulatory accommodation process. Coverage of Certain Preventive Services Under the ACA, 79 Fed. Reg. 51,092 (Aug. 27, 2014). They also issued a second NPRM to extend the accommodation process to closely held for-profit entities with religious objections to contraceptive coverage in light of the decision in *Hobby Lobby*. *See* 79 Fed. Reg. 51,118 (Aug. 27, 2014). After receiving more than 75,000 comments, the Agencies finalized both the August 2014 IFRs and the August 2014 proposed rules. *See* 80 Fed. Reg. 41,318, 41,324 (July 14, 2015).

Meanwhile, the litigation about whether the accommodation process satisfied the government's RFRA obligations toward non-profit religious entities generated a split among the federal appeals courts, and the Supreme Court granted certiorari in *Zubik v. Burwell* to resolve it. On May 16, 2016, the Court issued a *per curiam* opinion vacating the judgments of the courts of appeals and remanding the cases "[i]n light of the . . . substantial clarification and refinement in the positions of the parties" in supplemental briefs suggesting that the government could modify the accommodation to satisfy the religious objectors. 136 S. Ct. at 1560. The Court stated that it anticipated that, on remand, the courts of appeals would "allow the parties sufficient time to resolve any outstanding issues between them." *Id*.

The Agencies then issued a Request for Information ("RFI") seeking public comment on options for modifying the accommodation process in light of the supplemental briefing in *Zubik* and the Court's remand order. Request for Information, 81 Fed. Reg. 47,741 (July 22, 2016). In response to the RFI, the Agencies received over 54,000 public comments. AR

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 7
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491

CD8 at 218051-272990.  On January 9, 2017, the Agencies issued a "FAQ" noting that, after a review of the comments and considering various options, the Agencies could not find a way to amend the accommodation to satisfy objecting organizations while also pursuing the Agencies' policy goals.  FAQs About ACA Implementation Part 36 ("FAQs") (Jan. 9, 2017), AR CD9 at 370093-370103, 370104-370114.   Thus, the litigation on remand, involving dozens of cases and dozens of plaintiffs, remained unresolved.

On May 4, 2017, the President issued an Executive Order "Promoting Free Speech and Religious Liberty."  Exec. Order No. 13,798, 82 Fed. Reg. 21,675 (May 4, 2017).  It instructed the Agencies to "consider issuing amended regulations, consistent with applicable law, to address conscience-based objections to the preventive-care mandate promulgated under section 300gg-13(a)(4)."  *Id*.  Consistent with the Executive Order, the Agencies concluded that it was "appropriate to reexamine the exemption and accommodation scheme currently in place for the Mandate," and issued the Rules at issue here on October 6, 2017.  Religious Exemption Rule, 82 Fed. Reg. 47,799; *accord* Moral Exemption Rule, 82 Fed. Reg. 47,838.  The Agencies requested public comments on the Rules by December 5, 2017.

The Religious Exemption Rule expands the exemption for non-governmental plan sponsors that object to providing coverage for all or a subset of contraceptive services based on sincerely held religious beliefs, as well as for institutions of higher education in their arrangement of student health plans, to the extent of these entities' sincerely held religious beliefs.  45 C.F.R. § 147.132(a)(2).  The Moral Exemption Rule provides an exemption for certain non-governmental plan sponsors that object to providing all or a subset of contraceptive services based on sincerely held moral convictions, as well as for institutions of higher education in their arrangement of student health plans, to the extent of these entities' sincerely held moral convictions.  *Id*. § 147.133(a)(2).[5]

---

[5] Each rule also includes an "individual exemption" that allows a willing plan sponsor of a group health plan or a willing health insurance issuer offering group or individual health insurance coverage to provide a separate benefit package option or separate policy, certificate, or contract of insurance to an individual who objects to coverage for contraceptive services based on sincerely held religious beliefs or moral convictions.   45 C.F.R. §§ 147.132(b), 147.133(b).

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 8
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 616-8491**

Under the Rules, HRSA remains free to define "contraceptive services" as "contraceptive or sterilization items, procedures, or services, or related patient education or counseling, to the extent specified for purposes of § 147.130(a)(1)(iv)" for all non-exempt employers. *See* 82 Fed. Reg. at 47,835; 45 C.F.R. §§ 147.132(c), 147.133(c). "Contraceptive services" do not include contraceptive services for men, and never have, because the relevant provision of the ACA only authorizes HRSA to develop guidelines for "additional preventive care and screenings" to be covered "with respect to women." 42 U.S.C. § 300gg-13(a)(4); 78 Fed. Reg. 8,456, 8,458 n.3 (Feb. 6, 2013) (noting that "services relating to a man's reproductive capacity, such as vasectomies and condoms" are excluded from the HRSA guidelines on contraceptive services for women).[6]  As under the previous rule, exempt entities are not required to self-certify, but they are still subject to regulatory disclosure requirements for plan exclusions or reductions in a covered benefit.  82 Fed. Reg. at 47,808 & n.54; *id*. at 47,804 & n.32.  The Rules also maintain the accommodation process as a voluntary mechanism to provide contraceptive availability for women covered by the plans of exempt entities that choose to use it.  45 C.F.R. § 147.131; 26 C.F.R § 54.9815-2713A; 29 C.F.R. § 2590.715-2713A.  On October 6, 2017, HRSA updated its Guidelines to exempt entities and individuals that qualify for exemptions from the Guidelines' requirements.  *See* Guidelines.

## ARGUMENT

## I.   PLAINTIFF LACKS STANDING.

As an initial matter, this Court lacks jurisdiction to adjudicate Plaintiff's claims because the State lacks standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  The standing inquiry is "especially rigorous" where, as here, a plaintiff asks a federal court "to

---

[6] Contrary to Plaintiff's suggestion, Compl. ¶ 22, p. 29, "[c]ontraceptive services" under the Rules also do not include drugs or methods approved by the FDA for contraceptive use that are prescribed for a non-contraceptive and non-preventive use to treat an existing condition, because 42 U.S.C. § 300gg-13(a)(4) does not apply to non-preventive care provided for treatment of an existing condition.  *See* 82 Fed. Reg. at 47,805 & n.48.  In other words, if drugs or methods approved by the FDA for contraceptive use are prescribed for a non-contraceptive purpose, the Mandate does not require they be covered and the Rules do not exempt them from coverage (if they would otherwise be covered by a plan).

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 9
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 616-8491**

decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997).[7]

The challenged Rules do not command the State to take, or refrain from taking, any action. Accordingly, this case is unlike the most common situation in which states have standing to challenge federal law. *See, e.g., New York v. United States*, 505 U.S. 144 (1992); *Oregon v. Mitchell*, 400 U.S. 112 (1970). Washington therefore complains of injury "from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*," but that theory makes standing "'substantially more difficult' to establish." *See Lujan*, 504 U.S. at 562. The State's conjecture about indirect or incidental financial consequences that might flow from the Rules is not sufficient to show any injury to the State, much less a "*certainly impending*" injury. *Id*. at 564 n.2.

Plaintiff's first theory of harm is that the expanded exemptions will injure "the state's finances" by "forc[ing]" state residents "denied no-cost contraceptive coverage as a result of the new rules" to obtain subsidized contraception through state-funded programs and by increasing the number of unintended pregnancies among State residents, causing the State to incur costs related to those pregnancies. Compl. ¶¶ 8, 15, pp. 4, 5. But conclusory allegations that a state's budget or tax revenues will be harmed in some general way by a federal policy are not sufficient to support standing. *See, e.g., Pennsylvania v. Kleppe*, 533 F.2d 668, 672-73 (D.C. Cir. 1976); *Wyoming v. U.S. Dep't of the Interior*, 674 F.3d 1220, 1234 (10th Cir. 2012); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If such hypothetical impacts on state finances were enough to establish Article III standing, a state could challenge virtually any federal policy.[8] *See Wyoming*, 674 F.3d at 1234 (requiring "concrete evidence" of an

---

[7] As to Count I, a state is not a "person" protected by the Due Process Clause of the Fifth Amendment. *See South Carolina v. Katzenbach*, 383 U.S. 301, 323-34 (1966); *United States v. Thoms*, 684 F.3d 893, 899 n.4 (9th Cir. 2012). As to Count II, Plaintiff cites no case recognizing the standing of a state to bring an Establishment Clause challenge, and it is not clear how a state can suffer "spiritual or psychological harm" or have "religious beliefs" that can be "stigmatized." *See Catholic League for Religious & Civil Rights v. City & Cty. of San Francisco*, 624 F.3d 1043, 1050-53 (9th Cir. 2010).

[8] Even if Plaintiff had alleged a fiscal injury traceable to the Rules, that injury would not suffice to confer standing on the State on its own behalf. The State's generalized allegations

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 10
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491

impact on state finances given the "the unavoidable economic repercussions of virtually all federal policies").

Moreover, Plaintiff has failed to allege that any of the employers of the "up to 1.5 million insureds" in Washington who receive insurance through their employers' self-funded plans would be newly qualified for the expanded exemptions, much less that they would seek an exemption rather than an accommodation.[9]  *See* Compl. ¶ 73, p. 21.  Plaintiff has also failed to allege that the employees of such an employer (or their dependents) would then seek access to a form of contraception that this employer objected to, and that would not be available through, for example, a family member's plan.  And it ignores the fact that employers may be required to cover contraception under Plaintiff's own "contraceptive parity" law, even if the objecting organizations invoked the federal exemptions to the ACA's Mandate.  *Cf. id*. ¶ 69, p. 20.  In short, Plaintiff has failed to sufficiently allege that any state residents will imminently lose coverage as a result of the expanded exemptions.

Even if the State had adequately alleged that its residents would lose coverage as a result of the Rules, Plaintiff's alleged harms rely on an attenuated chain of causation.  It is pure speculation that women who lose coverage for contraception would qualify for, and seek contraception from, programs that are at least partially state-funded.  *See id*. ¶¶ 76-77, p. 22.  Plaintiff's allegation that the expanded exemptions "will result in more unintended pregnancies" in Washington, causing the State's Medicaid program to incur greater costs, is even more attenuated.  *Id*. ¶¶ 78-82, pp. 22-23.  The expanded exemptions do not "forc[e]" anyone to forgo contraceptive use, much less "forc[e]" eligible individuals to seek subsidized contraception, prenatal care and delivery services from state programs.  Moreover, the costs

of harm to the State's finances is not a proprietary interest apart from the interests of its citizens.  *See City of Rohnert Park v. Harris*, 601 F.2d 1040, 1044-45 (9th Cir. 1979); *People ex rel. Hartigan v. Cheney*, 726 F. Supp. 219, 225 (C.D. Ill. 1989).

[9] Employers seeking the exemption are subject to ERISA's timely disclosure requirements for plan exclusions or reductions in a covered service or benefit.  *See* 82 Fed. Reg. at 47,808 & n.54.

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 11
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 616-8491**

of such "unintended pregnancies" would likely be covered by these employees' health plans; the Rules have no effect on prenatal care.

In all events, Plaintiff cannot allege an injury to "the state's finances" based on its voluntary decision to "maintain[] state government-funded programs to ensure Washington women have access to contraception." Compl. ¶ 8, p. 4. A state suffers no legally cognizable injury if an eligible person applies for a benefit that a state has voluntarily elected to provide (such as those available through a state's Family Planning or Take Charge programs). *See Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (holding that "[n]o State can be heard to complain about damage inflicted by its own hand").

Nor can Plaintiff overcome its lack of standing by asserting a right as *parens patriae* to represent the interests of its citizens. *See* Compl. ¶¶ 12, 56, pp. 5, 18. A state can sue a private party to protect its *parens patriae* interest in the health and well-being of its citizens. *Snapp*, 458 U.S. at 602-03. But it cannot bring such a suit against the federal government. *See Massachusetts v. Mellon*, 262 U.S. 447, 485-86 (1923). "It is the United States, and not the state, which represents [its citizens] as parens patriae," and "[i]t is no part of [a state's] duty or power to enforce their rights in respect of their relations with the federal government." *Id.* at 485-86. This well-settled rule controls here.

Plaintiff's invocation of its "quasi-sovereign" interests, Compl. ¶¶ 13-14, 55, pp. 5, 18, similarly fails to establish standing. The key case for such standing—*Massachusetts v. EPA*, 549 U.S. 497, 522–23 (2007)—makes clear that Plaintiff has no such interests to protect here. *Massachusetts* involved an alleged concrete, direct injury to Massachusetts's quasi-sovereign interests: harm to the physical integrity of its "sovereign territory," implicating its "independent interest in all the earth and air within its domain." *Id.* at 519. Washington can allege no such concrete, direct injury to its own interests here. Any "quasi-sovereign" interests in the health and safety of its residents, Compl. ¶14, p. 5, are really the interests of the State's citizens, which Washington cannot assert as *parens patriae* against the federal

government.  *Snapp*, 458 U.S. at 602-03; *see also Massachusetts*, 549 U.S. at 520 n.17.[10]

Thus, Plaintiff has no standing to sue.

## II.    THE RULES DO NOT VIOLATE THE FIFTH AMENDMENT'S EQUAL PROTECTION PRINCIPLE.

Plaintiff next contends that the Rules and the Guidelines discriminate on the basis of sex in violation of the equal protection component of the Fifth Amendment's Due Process Clause.  Compl. ¶¶ 83-90, pp. 23-24; *see United States v. Windsor*, 133 S. Ct. 2675, 2695 (2013) (citations omitted).  It lacks standing to bring this claim, *see supra* n.7.  In any event, this argument is meritless.

When faced with a claim of discrimination on the basis of sex, courts assess (i) whether the classification created by the challenged action is facially based upon sex and, if not, (ii) whether there are other factors—such as the purpose of the law or the existence of a disparate impact—that demonstrate an invidious intent to discriminate on the basis of sex. *See Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 274 (1979).  With regard to "this second inquiry, impact provides an important starting point, but purposeful discrimination is the condition that offends the Constitution."  *Id.* (citations omitted).  Sex-based distinctions are subject to intermediate scrutiny, meaning that the distinction must be substantially related to an important governmental interest.  *Wengler v. Druggists Mut. Ins. Co.*, 446 U.S. 142,

---

[10] In *Washington v. Trump*, 847 F.3d 1151, 1159 (9th Cir. 2017), *cert. denied*, 2017 WL 3224674 (Nov. 13, 2017), and *Hawaii v. Trump*, 859 F.3d 741, 764 (9th Cir. 2017), *vacated as moot*, 874 F.3d 1112 (9th Cir. 2017), the Ninth Circuit held that the states could sue the federal government on behalf of their citizens under the third-party standing doctrine. Washington does not, in this case, invoke third-party standing and, in any case, the plaintiff invoking third-party standing must have suffered an injury cognizable under Article III, *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004); *cf. Washington*, 847 F.3d at 1159 (grounding state's standing in proprietary interests as an operator of a university); *Hawaii*, 859 F.3d at 765 (same), and as explained above, Washington has not suffered such an injury here.

The vacated decision in *Hawaii* also found that the state had standing under an "alternative standing theory: that the Order impairs its sovereign interests" in carrying out state policies because the Executive Order at issue "would prevent the State from assisting with refugee resettlement," impairing the state's "sovereign interests in carrying out its refugee policies." 859 F.3d at 765.  This theory of state standing is incorrect, but in any event Washington does not allege that the expanded exemptions prevent the State from enforcing its legal code.  Nor could it make such an assertion; nothing in the Rules prevents a state from imposing its own contraceptive mandate or alters any such mandate already in place.

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 13
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491

150 (1980).  Distinctions that do not target a protected class or burden a fundamental right are subject to rational-basis review.  *Heller v. Doe*, 509 U.S. 312, 319–20 (1993).  Under this standard, "a classification must be upheld … if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  *Id*. at 320 (citation omitted).

Plaintiff makes a series of meritless arguments under these standards.  According to Plaintiff, "[a]s a result of Defendants' new regulations, generally only women, not men, may have coverage for reproductive health care denied based on their employer's religious or moral objection."  Compl. ¶ 85, pp. 23-24.  Plaintiff further alleges that the Rules and Guidelines "intentionally interfere with women's ability to access necessary preventive care" and "perpetuate gender stereotypes."  *Id.* ¶¶ 86-87, p. 24.  Finally, Plaintiff insists that the Rules and Guidelines "do not serve an important governmental objective sufficient to justify the gender-based discrimination."  *Id.* ¶ 88, p. 24.  None of these contentions withstands scrutiny.

The Rules do not draw any sex-based distinction.  Consistent with the ACA, the Rules do *not* require health plans to cover male contraceptives, but do allow HRSA generally to require coverage for female contraceptives without cost-sharing, while providing an exemption for those with conscience objections.  *See* 78 Fed. Reg. at 8,458 n.3.  Any distinctions in coverage among women are not premised on sex, but on whether the employer, other plan sponsor, or institution of higher education objects, for religious or moral reasons, to facilitating the provision of contraceptives.  Men receive no better treatment.  To the contrary, as noted, there is no requirement in 42 U.S.C. § 300gg-13(a)(4) for any plan to cover male contraceptives.  The statutory provision requiring coverage for additional preventive services supported by HRSA pertains only to such services for "women." 42 U.S.C. § 300gg-13(a)(4).  Any sex-based distinction is a function of the statute, not the Rules.

Nor does any other factor reflect any invidious intent to discriminate on the basis of sex.  Plaintiff alleges that the Rules and Guidelines "intentionally interfere with women's

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 14
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491

ability to access necessary preventive care" and "perpetuate gender stereotypes."  Compl. ¶¶ 86-87, p. 24.  The "intentional[] interfere[nce]" allegation appears to depend on a meaning of intent that the Supreme Court rejected nearly 40 years ago in *Feeney*.  While it is undoubtedly true that the Agencies knew that expanding the exemption could affect contraceptive coverage for women, that does not establish the sort of intent necessary to prevail on an equal protection claim.  "Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences . . . It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."  *Feeney*, 442 U.S. at 279.  There was no such invidious intent here, and Plaintiff offers no reason to believe otherwise.  Rather, as the Rules explain, they (and the Guidelines) were adopted to relieve the burdens on those who object to the provision of contraceptive services on religious or moral grounds.

Because the Rules do not create sex-based distinctions, they are subject to rational basis review.  The Rules satisfy this "lowest level of scrutiny," *United States v. Dumas*, 64 F.3d 1427, 1429 (9th Cir. 1995), because they are rationally related to legitimate government interests, *Lyng v. Int'l Union*, 485 U.S. 360, 370 (1988).  The Religious Exemption Rule accommodates religion by "provid[ing] conscience protections for individuals and entities with sincerely held religious beliefs in certain health care contexts."  82 Fed. Reg. at 47,793.  And the accommodation of religious beliefs is an important government interest, as the Supreme Court recognized in *Cutter v. Wilkinson*, 544 U.S. 709, 724-25 (2005).  For the same reasons, the Religious Exemption Rule would satisfy intermediate scrutiny.

The Moral Exemption Rule also has a rational basis (and would satisfy intermediate scrutiny, if that standard applied).  It is designed to protect "sincerely held moral convictions" by exempting those with such convictions from facilitating the provision of contraceptive services.  82 Fed. Reg. at 47,839.  Federal law has long recognized that it is appropriate for the government to protect freedom of conscience.  *See Welsh v. United States*, 398 U.S. 333, 340 (1970) (individual qualified as a religious conscientious objector to the draft if he or she

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 15
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491

"deeply and sincerely holds beliefs that are purely ethical or moral in source and content but that nevertheless impose upon him a duty of conscience to refrain from participating in any war at any time, those beliefs certainly occupy in the life of that individual 'a place parallel to that filled by . . . God' in traditionally religious persons") (plurality opinion); *United States v. Seeger*, 380 U.S. 163 (1965) (similar holding); *Doe v. Bolton*, 410 U.S. 179, 197-98 (1973). The moral exemptions bring the Mandate into harmony with numerous federal statutes providing parallel conscience protections for religious beliefs and moral convictions.  *See, e.g.*, 82 Fed. Reg. at 47,844-46.  And the State of Washington agrees that it is legitimate for governments to protect non-religious moral beliefs:  It provides by statute that "individual health care provider[s], religiously sponsored health carrier[s], or health care facilit[ies]" need not provide services or payment for services if they "if they object to so doing for reason of conscience or religion."  Revised Code of Washington (RCW) 48.43.065(2)(a).

## III.     THE RULES DO NOT VIOLATE THE ESTABLISHMENT CLAUSE.

Count II alleges that the Rules violate the Establishment Clause.  Compl. ¶¶ 91-96, pp. 24-25.  To the contrary: the Rules represent a constitutional exercise of executive authority to alleviate unjustified substantial burdens on the exercise of non-religious moral convictions and religious beliefs.

When the government relieves such burdens, it does not violate the Establishment Clause; "it follows the best of our traditions." *Zorach v. Clauson*, 343 U.S. 306, 314 (1952). "[I]n commanding neutrality the Religion Clauses do not require the government to be oblivious to impositions that legitimate exercises of state power may place on religious belief and practice."  *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 705 (1994). "[G]overnment may (and sometimes must) accommodate religious practices." *Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 334 (1987). "'[T]here is room for play in the joints between' the Free Exercise and Establishment Clauses, allowing the government to accommodate religion beyond free exercise requirements, without offense to the Establishment Clause." *Cutter*, 544 U.S. at

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 16
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491

713.  Thus, the Supreme Court has upheld a broad range of accommodations, including the exemption of religious organizations from Title VII's prohibition against discrimination in employment on the basis of religion, *Amos*, 483 U.S. at 335-39; a state property tax exemption for religious organizations, *Walz v. Tax Comm'n of N.Y.*, 397 U.S. 664, 672-80 (1970); and a state program releasing public school children during the school day to receive religious instruction at religious centers, *Zorach*, 343 U.S. at 315.

The Supreme Court and the Ninth Circuit continue to apply the three-part test articulated in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), to evaluate Establishment Clause challenges to government acts seeking to accommodate the practice of religious beliefs.  *See Amos*, 483 U.S. at 335; *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 972 (9th Cir. 2011).  "Under *Lemon*, a government act is consistent with the Establishment Clause if it: (1) has a secular purpose; (2) has a principal or primary effect that neither advances nor disapproves of religion; and (3) does not foster excessive governmental entanglement with religion."  *Johnson*, 658 F.3d at 972 (citations omitted).  The Rules easily satisfy that test.

### A.      The Rules Have a Secular Purpose.

Each Rule satisfies *Lemon*'s first prong because it serves a secular legislative purpose. Specifically, the Religious Exemption Rule alleviates significant governmental interference with the exercise of religion, which the Supreme Court has long recognized as one such secular legislative purpose.  *Amos*, 483 U.S. at 335; *Bowen v. Kendrick*, 487 U.S. 589, 602 (1988); *see* 82 Fed. Reg. at 47,793 (purpose of the Rules is "to better balance the Government's interest in ensuring coverage for contraceptive and sterilization services in relation to the Government's interests, including as reflected throughout Federal law, to provide conscience protections for individuals and entities with sincerely held religious beliefs in certain health care contexts, and to minimize burdens in our regulation of the health insurance market").  And the Moral Exemption Rule serves the patently secular purpose of accommodating moral convictions not based in religion.  82 Fed. Reg. at 47,844.

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 17
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491

That the purpose of the Religious Exemption Rule is related to religion does not undermine the conclusion that the Rules serve a secular legislative purpose.  As the Ninth Circuit has explained, the first prong of the *Lemon* test "does not mean that the law's purpose must be unrelated to religion – that would amount to a requirement that the government show a callous indifference to religious groups, and the Establishment Clause has never been so interpreted."  *Mayweathers v. Newland*, 314 F.3d 1062, 1068 (9th Cir. 2002).  Rather, "'[a] practice will stumble on the purpose prong only if it is motivated *wholly* by an impermissible purpose," such as "to endorse or disapprove of religion."  *Am. Family Ass'n v. City & Cty. of San Francisco*, 277 F.3d 1114, 1121 (9th Cir. 2002) (internal citation omitted).  Moreover, the court's "analysis under this prong focuses purely on *purpose*; we do not question the propriety of the means to achieve that purpose or whether the defendants were correct or even reasonable in the assumptions underlying their actions . . . ."  *Id.* at 1121.  Nothing in the Rules shows any intent to advance any particular faith or to promote religion in general.  Instead, the Rules merely seek to alleviate certain substantial hardships faced by entities and individuals in the provision of health care.  The fact that the Rules apply to entities and individuals with moral objections to the provision of contraception confirms that the Rules possess a secular purpose.

**B.      The Effect of the Rules Is Neither to Advance Nor Inhibit Religion.**

The Rules also satisfy the second prong of the *Lemon* test, which requires that a law's "principal or primary effect . . . neither advance[] nor inhibit[] religion."  *Lemon*, 403 U.S. at 612.  Removing barriers to the exercise of religious freedom does not advance religion; to the contrary, "there is ample room for accommodation of religion under the Establishment Clause."  *Amos*, 483 U.S. at 338.  The Rules do not promote or subsidize a religious belief or message; instead, they merely free entities and individuals with objections to providing coverage for contraception based on religious beliefs and moral convictions to practice those beliefs and convictions as they otherwise would in the absence of certain government-

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 18
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491

imposed regulations.  The Rules "merely accommodate[] and protect[] the free exercise of religion, which the Constitution allows."  *Mayweathers*, 314 F.3d at 1069.

### C.     The Rules Do Not Foster Excessive Government Entanglement with Religion.

The Rules satisfy the third prong of *Lemon* because they do not "entangle the State in an unlawful fostering of religion."[11]  *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 145 (1987).  The Rules "do[] not single out a particular class of [religious observers] for favorable treatment and thereby have the effect of implicitly endorsing a particular religious belief."  *Id.* at 145 n.11.  They apply broadly to religious objectors and to certain moral objectors.  And the Rules also do not "impermissibly entangle[] church and state."  *Amos*, 483 U.S. at 339.  Like the statutory provision that exempted religious groups from Title VII's prohibition against religious discrimination in *Amos*, the Rules "effectuate[] a more complete separation of the two . . . ."  *Amos*, 483 U.S. at 339.  By relieving religious institutions from certain government-imposed burdens, the Rules reduce state interference with religious exercise.  *See Mayweathers*, 314 F.3d at 1069.[12]

Finally, Plaintiff's allegation that the Rules violate the Establishment Clause, *inter alia*, because they purportedly "permit a for-profit business to impose the costs of its owners' anti-contraception beliefs on employees and their dependents," Compl. ¶ 93, p. 25, finds no support in either *Texas Monthly, Inc. v. Bullock*, 489 U.S. 1 (1989), or *Estate of Thornton v. Caldor, Inc.*, 472 U.S. 703 (1985).  *Estate of Thornton* involved a statute that "compel[led]

---

[11] In *Agostini v. Felton*, 521 U.S. 203 (1997), the Supreme Court stated that "the factors used to determine the 'effect' of a challenged action were similar to those used to determine whether there was an excessive entanglement."  *Barnes-Wallace v. City of San Diego*, 704 F.3d 1067, 1083 (9th Cir. 2012) (citing *Agostini*, 521 U.S. at 232-33).  As shown herein, the Rules pass the entanglement inquiry, regardless of whether it is understood to be a separate factor or merely part of the inquiry into the Rules' effect.  Additionally, the "coercion test" mentioned in cases such as *Lee v. Weisman*, 505 U.S. 577 (1992), is not relevant here.  That test applies not to Establishment Clause challenges generally, but specifically where the government sponsors religious exercises.  The Rules do not coerce anyone into supporting or participating in religion or its exercise.

[12] As noted above, Plaintiff clearly agrees; its own laws provide that "individual health care provider[s], religiously sponsored health carrier[s], or health care facilit[ies]" are not required to provide services or payment for services if they "if they object to so doing for reason of conscience or religion."  RCW 48.43.065(2)(a).

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 19
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 616-8491**

people to act in the name of … religion" by requiring private employers to permit employees to take off work on their chosen Sabbath day. 472 U.S. at 708. By contrast, the Religious Exemption Rule does not compel *any* action by private employers, but leaves room for private employers to exercise their religion. This lifting of a government-imposed burden on religious exercise is permitted and even encouraged by the First Amendment, as *Texas Monthly* makes clear. *See* 489 U.S. at 18 n.8 (plurality opinion).

## IV.    PLAINTIFF'S PROCEDURAL ADMINISTRATIVE PROCEDURE ACT CLAIM IS MERITLESS.

Plaintiff asserts that the Rules should be enjoined because they were issued without notice and comment. Compl. ¶¶ 1-8, pp. 25-26. That claim is meritless.

### A.    The Agencies Issued the Rules Pursuant to Express Statutory Authority.

The APA's informal rulemaking provisions generally require that agencies provide notice of a proposed rule, invite and consider public comments, and adopt a final rule that includes a statement of basis and purpose. *See* 5 U.S.C. § 553(b), (c). But these provisions give way in the face of express statutory authorization to the contrary, and the Rules were issued pursuant to such express statutory authorization. Specifically, each Agency was authorized by statute to "promulgate *any* interim final rules *as the Secretary determines* are appropriate" relating to health coverage. *See* 26 U.S.C. § 9833; 29 U.S.C. § 1191c; 42 U.S.C. § 300gg-92 (emphasis added). These statutory provisions are unique; other statutes granting general regulatory authority do not similarly authorize IFRs. The Agencies relied on this statutory authority to issue IFRs in 2010, 2011, and 2014 regarding the Mandate. 75 Fed. Reg. 41,726, 41,729-30 (July 19, 2010); 76 Fed. Reg. at 46,624; 79 Fed. Reg. at 51,095; *cf. Real Alternatives, Inc. v. Burwell*, 150 F. Supp. 3d 419, 427 n.6 (M.D. Pa. 2015) (noting that APA notice-and-comment requirements did not apply to the 2011 IFR that was issued under this specific statutory authority). The Agencies thus have met the APA's only procedural requirements that are applicable here: they have requested comments for a period of sixty days on the IFRs, and they will not issue final regulations until they receive and carefully consider these comments. *See* 82 Fed. Reg. at 47,792; 82 Fed. Reg. at 47,838.

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 20
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491

1    Plaintiff's contrary position writes this express grant of statutory authority out of the

2    statute.  Under the State's view, the grant of authority is meaningless; it would merely give

3    the Secretaries the same authority they already possessed.  But when Congress sets forth its

4    "clear intent that APA notice and comment procedures need not be followed," an agency may

5    dispense with those requirements and issue an IFR.  *Methodist Hosp. of Sacramento v.*

6    *Shalala*, 38 F.3d 1225, 1237 (D.C. Cir. 1994); *Asiana Airlines v. FAA*, 134 F.3d 393, 397-98

7    (D.C. Cir. 1998).  The relevant question is "whether Congress has established procedures so

8    clearly different from those required by the APA that it must have intended to displace the

9    norm."  *Asiana Airlines,* 134 F.3d at 397.  That is the case here.  The express authority to

10   issue "any interim final rules *as the Secretar[ies] determine[]* are appropriate" is clearly a

11   different standard from the default standard of good cause under the APA.

**B.    The Agencies Had Good Cause to Issue Interim Final Rules.**

13   In any event, the Agencies' decision to issue the Rules on an interim final basis would

14   have been justified even if the APA governed.  The APA authorizes agencies to dispense with

15   notice-and-comment rulemaking procedures "when the agency for good cause finds (and

16   incorporates the finding and a brief statement of reasons therefor[e] in the rules issued) that

17   notice and public procedure thereon are impracticable, unnecessary, or contrary to the public

18   interest."   5  U.S.C.  § 553(b)(3)(B).   That Congress "has specifically authorized the

19   Secretaries to promulgate interim final rules," at a minimum, "provides support towards a

20   finding of 'good cause' to proceed without notice and comment."  *Coalition for Parity, Inc.*

21   *v. Sebelius*, 709 F. Supp. 2d 10, 20 (D.D.C. 2010).

22   And even without that thumb on the scale, good cause existed to issue the Rules as

23   interim final rules with an accompanying request for comment.  *First*, the Agencies found

24   that any additional delay in issuing the Rules would be contrary to the public interest.  82

25   Fed. Reg. at 47,814-15; 82 Fed. Reg. at 47,855–56.  Prompt effectiveness provided entities

26   and individuals facing burdens on their sincerely held religious beliefs and moral convictions

27   with important and urgent relief.  82 Fed. Reg. at 47,814; *see also* 82 Fed. Reg. at 47,855;

28

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 21
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491

*Priests for Life v. U.S. Dep't of Health & Human Servs.*, 772 F.3d 229, 276 (D.C. Cir. 2014), *vacated and remanded by Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (finding good cause existed for the August 22, 2014, IFR after "[t]he government reasonably interpreted the Supreme Court's order in *Wheaton College* as obligating it to take action to further alleviate any burden on the religious liberty of objecting religious organizations"); *Am. Fed'n of Gov't Emps., AFL-CIO v. Block*, 655 F.2d 1153, 1155-57 (D.C. Cir. 1981) (finding that an interim rule promulgated without notice and comment was "a reasonable and perhaps inevitable response" to a court order requiring the institution of new rate standards because "the absence of specific and immediate guidance" from the agency would have "creat[ed] confusion" and "caused economic harm and disruption").[13]   The clarity provided in the Rules also served the public interest by removing barriers to participation in the insurance market and reducing the cost of health insurance.  82 Fed. Reg. at 47,815.  And the Rules removed any deterrent to objectors considering organizing entities that would be subject to the Mandate, or from offering health insurance in the first place.  *Id.* at 47,814.  Moreover, the Rules resolved the uncertainty, inconsistency, and costs resulting from the dozens of lawsuits over the Mandate for nearly five years.  *See Serv. Emps. Int'l Union, Local 102 v. Cty. of San Diego*, 60 F.3d 1346, 1352 n.3 (9th Cir. 1994) (finding good cause where "the federal courts were issuing conflicting decisions" and the agency had reviewed public comments six years before).  Indeed, because more than a year has elapsed since the *Zubik* remand, some courts had begun pressing for resolution.  *See, e.g.*, Order, *Notre Dame v. Price*, No. 13-3853 (7th Cir), ECF No. 150 (Aug. 14, 2017).   The Religious Exemption Rule "provide[d] a specific policy resolution that courts ha[d] been waiting to receive from the [Agencies] for more than a year" following *Zubik*.  82 Fed. Reg. at 47,814.

---

[13] The August 3, 2011, and August 27, 2014 IFRs contained similar statements of good cause, underscoring the long-recognized need for prompt guidance and clarity on the scope of these exemptions and accommodations. 76 Fed. Reg. at 46,624 ("additional opportunity for public comment would be impractical and contrary to the public interest"); 79 Fed. Reg. at 51,095 (delaying the availability of the alternative process provided by the Supreme Court to Wheaton College to "other eligible organizations" "in order to allow for a full notice and comment period would delay the ability of eligible organizations to avail themselves of this alternative process").

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 22
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491

*Second*, the Agencies demonstrated a willingness to consider public comment, both prior to and following issuance of the Rules.  *See Priests for Life*, 772 F.3d at 276; *Conservation Law Found. v. Evans*, 360 F.3d 21, 29-30 (1st Cir. 2004).  As discussed above, *see supra* pp. 4-8, the Agencies received and considered "more than 100,000 public comments on multiple occasions" on the exemption and accommodation issues, including within the year prior to issuing the Rules.  82 Fed. Reg. at 47,814.  The Agencies have routinely solicited and addressed comments in issuing their final regulations, and—even though the Agencies could not find a way to amend the accommodation to fully eliminate the substantial burden on religious practice after reviewing these thousands of most recent comments—Washington has not alleged to the contrary.

The Agencies also solicited comments for 60 days following issuance of the Rules, and will finalize the Rules only after all comments have been considered.  *See* 82 Fed. Reg. at 47,792 (requesting comments on or before December 5, 2017); 82 Fed. Reg. at 47,838 (same).  Their solicitation of post-promulgation comments "suggests that the [Departments have] been open-minded," with the result that "real 'public reconsideration of the issued rule' [is taking] place."  *Petry v. Block*, 737 F.2d 1193, 1203 (D.C. Cir. 1984) (citation omitted) (in light of post-promulgation comment period, remand to the agency for further proceedings was unnecessary); *see also Republic Steel Corp. v. Costle*, 621 F.2d 797, 804 (6th Cir. 1980) (upholding rule where agency provided only post-promulgation comment period); *Universal Health Servs. of McAllen, Inc. v. Sullivan*, 770 F. Supp. 704, 721 (D.D.C. 1991).

*Finally*, the Rules are effective only until final rules are issued.  "The interim nature of a challenged rule is a significant factor in evaluating an agency's good cause claim."  *Nat'l Women, Infants, & Children Grocers Ass'n v. Food & Nutrition Serv.*, 416 F. Supp. 2d 92, 107 (D.D.C. 2006) (citation omitted); *see also Mid-Tex Elec. Co-op., Inc. v. FERC*, 822 F.2d 1123, 1132 (D.C. Cir. 1987).  These Rules are merely temporary.  The Agencies gave interested parties two full months to review and comment upon the Rules before the Agencies issue final rules.

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 23
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 616-8491**

Even if a single justification "standing alone" would not constitute good cause, the court must consider whether the "combined effect" suffices.  *Nat'l Women Ass'n*, 416 F. Supp. 2d at 107; *Mid-Tex Elec. Coop., Inc.*, 822 F.2d at 1132-33.  The factors discussed above—whether considered individually or together—justified the Agencies' finding of "good cause."  *See Nat'l Women Ass'n*, 416 F. Supp. 2d at 104–05.

### C.     If the Lack of Formal Notice-and-Comment Was an Error, It Was Harmless.

In any event, any error in forgoing notice and comment was harmless.  The APA's judicial review provision instructs courts to take "due account . . . of the rule of prejudicial error."  5 U.S.C. § 706.  Courts routinely apply this instruction when they determine whether an agency has failed to comply with the APA's notice-and-comment requirement.  *See Paulsen v. Daniels*, 413 F.3d 999, 1007 (9th Cir. 2005) (lack of notice-and-comment was harmless because "interested parties received some notice that sufficiently enabled them to participate in the rulemaking process"); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392 (9th Cir. 1995); *Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479 (9th Cir. 1992); *Sagebrush Rebellion, Inc. v. Hodel*, 790 F.2d 760, 764-65 (9th Cir. 1986).  The burden falls on the party asserting error to demonstrate prejudice.  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Here, the Agencies issued the Rules after receiving "more than 100,000 public comments" throughout six years of publishing and modifying these regulations, as part of an extensive discussion about whether and by what extent to expand the exemptions at issue here.  82 Fed. Reg. at 47,814.  Washington cannot bear its burden of showing prejudice, *see Paulsen*, 413 F.3d at 1006, because it, like all interested parties, has had multiple opportunities to comment on the scope of the exemptions and accommodations following multiple rounds of rulemaking, including the issuance of three IFRs, one ANPRM, two NPRMs, and one RFI on these issues.  *See* 75 Fed. Reg. at 41,726; 77 Fed. Reg. at 16,501; 81 Fed. Reg. 47,741 (July 22, 2016).  Notably, Washington does not allege any specific comments that it would have submitted on the Rules.  And comments addressing each of the claims that it now asserts were submitted in response to earlier rounds of rulemaking.  *See,*

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 24
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491

1  *e.g.*, AR CD8 at 218156, 262356 (raising equal protection concerns), *id*. at 264577, 265920

2  (raising Establishment Clause concerns), *id*. at 272126, 272089 (raising RFRA concerns), *id*.

3  at 264554, 269764 (raising anti-discrimination concerns).  Finally, Washington had another

4  opportunity to comment on the expanded exemptions before final rules are issued.

5  **V.      THE RULES ARE NOT ARBITRARY OR CAPRICIOUS.**

6         The arbitrary and capricious standard is highly deferential and presumes the validity

7  of agency action.  *Motor Vehicles Mfrs. Ass'n of U.S., Inc. v. Ruckleshaus*, 719 F.2d 1159

8  (D.C. Cir. 1983).  A court may not substitute its judgment for that of the agency, *Citizens to*

9  *Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), but must instead affirm an

10  agency's decision if a rational basis for that decision has been provided, even if the court

11  disagrees.  *E.g., Bowman Transp.*, *Inc. v. Ark. Best Freight Sys.*, 419 U.S. 281, 285 (1974).

12  Agency action is not arbitrary or capricious if it "is rational, based on consideration of the

13  relevant factors and within the scope of the authority delegated to the agency by the statute."

14  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983); *see*

15  *also Overton Park*, 401 U.S. at 416.

16         The APA does not identify either "evidence-based" or "evidence-informed", *see*

17  Compl. ¶ 11, p. 27, as standards by which this Court is to evaluate the Agencies' rulemaking

18  here.[14]  *See* 5 U.S.C. § 706.  And contrary to Plaintiff's assertion, *see* Compl. ¶ 10, p. 27,

19  agency action is not subject to any more searching standard of review simply because it

20  represents a change in policy.  *FCC v. Fox Television Studios, Inc.*, 556 U.S. 502, 515 (2009).

21  The Agencies "need not demonstrate, to a court's satisfaction, that the reasons for the new

22  policy are better than the reasons for the old one."  *Id.*  Instead, it suffices that the new policy

23  is permissible under the statute, that there are good reasons for it, and that the agency believes

24  the new policy to be better.  *Id.*

25         The Rules detail at length the numerous considerations that led the Agencies to

26  conclude that extending a broader exemption and optional accommodation process to those

27  ────────────
[14] The ACA likewise does not require that the women's preventive services guidelines issued
28  by HRSA be "evidence-based" or "evidence-informed."  *See* 42 U.S.C. § 300gg-13(a)(4).

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 25
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 616-8491**

with sincere religious or moral objections "better balance[s] the Government's interest in ensuring coverage for contraceptive and sterilization services in relation to the Government's interests, including as reflected throughout Federal law, to provide conscience protections . . . and to minimize burdens in . . . regulation of the health insurance market."  82 Fed. Reg. at 47,793.    Together, these rationales amply supply the "reasoned explanation" that Washington claims the agencies lack.  Compl. ¶ 10, p. 27.

*First*, the Agencies properly considered their interest in concluding the litigation over the previous rules.  An agency does not act arbitrarily or capriciously where it considers the burdens of ongoing litigation when changing agency policy.  *Associated Builders & Contractors of Tex., Inc. v. NLRB,* 826 F.3d 215, 229 (5th Cir. 2016).  The litigation engendered by the Mandate has consumed substantial government resources and has required attention at the highest levels.  Indeed, the *Zubik* litigation alone comprises 52 suits brought by over 1,000 plaintiffs.   By expanding the exemption, the Agencies have effectively provided the relief sought in those suits.

*Second*, an Executive Order provides an agency with a valid, non-arbitrary reason to act, because such Orders carry the weight of the President's Article II directive power.  *See Myers v. United States*, 272 U.S. 52 (1926) (recognizing an implied directive power flowing from Article II's Appointments Clause, Executive Vesting Clause, and Take Care Clause).  For purposes of the APA, an agency has a reasoned basis to enter into a rulemaking where the President has instructed it to do so.  *See Sherley v. Sebelius*, 689 F.3d 776, 784 (D.C. Cir. 2012).  Thus, the President's Executive Order (*see* p. 8 above) provides the Agencies with yet another valid reason for promulgating the Rules.

*Third*, the Agencies reconsidered the interests served by the former regulations and concluded that the interests served by applying the Mandate to certain organizations with sincere religious or moral objections to providing such contraception coverage did not justify the burden on conscience from requiring them to do so.  The Agencies noted that Congress had not required any provision of contraceptive coverage under the ACA and had elected not

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 26
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491

to apply the preventive services provisions to grandfathered plans, and that the Agencies had provided exemptions from the Mandate since its creation.[15]  82 Fed. Reg. at 47,800-802.  The Agencies also determined that the administrative record was insufficient to overcome their concerns about these conscience objections, particularly in light of the ambiguity of evidence that contraceptive coverage accounts for a significant portion of the preventive services cost gap between men and women, the existence of numerous other governmental programs to assist low-income women to access free or subsidized contraception, the lack of tailoring between the Mandate and women most likely to experience unintended pregnancies, and the ambiguity of evidence that access to contraceptive coverage necessarily decreases unintended pregnancies with respect to those employed by an objector.  *Id*. at 47,804.

Plaintiff suggests that the new rule "reverse[s]" a prior agency decision, but this is far from the truth.  *See* Compl. ¶ 10, p. 27.  Under the new Rules, HRSA has maintained the Mandate for contraceptive coverage without cost sharing for non-exempt plans, *see* Guidelines and 82 Fed. Reg. at 47,807, and the Agencies kept the former accommodation process as an optional avenue for eligible employers, 82 Fed. Reg. at 47,806.  The new Rules expand the kinds of employers who may take advantage of the exemptions, but the exemptions are nonetheless cabined to those with sincere religious or moral objections.  *Id.*; 82 Fed. Reg. at 47,853-54 (scope of the individual moral exemption).  The new exemptions also level the playing field for employers that share the same kinds of religious convictions that the old exemption rules were intended to address, but who would not previously have been eligible for an exemption for reasons unrelated to their religious objections—for example, they place religious orders on the same footing as churches.  *See id*. at 47,801.  The Agencies anticipate that the new exemptions will only modestly expand the number of exempt employers vis-à-vis those who relied on the previous exemption or who obtained relief through litigation.  *See id.* at 47,819.  Far from arbitrary or capricious agency action,

---

[15] Congress's repeated efforts to protect religious beliefs and moral convictions in the healthcare context likewise weigh against applying the Mandate to organizations with sincere moral or religious objections.  *See* 82 Fed. Reg. 47,792 n.1.

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 27
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491

the Rules demonstrate that the Agencies took care not to forsake the interests of the previous regulatory regime, while nonetheless protecting religious and moral beliefs.

*Lastly*, the Agencies indicated that the requirements of the ACA and RFRA, as well as Congress's historical attention to religious freedom and conscience protection, guided their decision to issue the Rules.  *See* 82 Fed. Reg. at 47,793.  Because agencies must consider all explicit and implicit statutory factors, *see Overton Park*, 401 U.S. at 412, and because they may only act within their statutory jurisdiction, *see* 5 U.S.C. § 706(2)(C), these considerations were not only proper, but compulsory.  As discussed in § VI.D, below, these statutory provisions unambiguously dictate that the Agencies create the exemptions at issue here; even if this Court determines these statutory factors are ambiguous, the Agencies are entitled to *Chevron* deference in reading the statutes to at least permit them.

## VI. THE RULES ARE VALID UNDER THE APA BECAUSE THEY ARE IN ACCORDANCE WITH LAW, AND NOT IN EXCESS OF STATUTORY AUTHORITY.

In Count V, Plaintiff contends that the Rules are "'in excess of statutory jurisdiction, authority, or limitations, or short of statutory right,' 'not in accordance with law' or 'contrary to constitutional right' [and should] be held unlawful and set aside" under the APA.  Compl. ¶ 16, p. 28 (quoting U.S.C. § 706(2)).  According to the State, the Rules and Guidelines (1) violate the ACA "which require[s] coverage for preventive services for women and do[es] not provide an exception for religious or moral objections," *id*. ¶ 17, p. 28; (2) violate the First and Fifth Amendments for the reasons already discussed*, id.* ¶ 19, p. 28; (3) contravene Title VII, *id*. ¶ 20, p. 28; (4) transgress the ACA's anti-discrimination provision, *id*. ¶ 21, p. 29; (5) contradict the ACA's prohibition on regulations that improperly impede access to care, *id*. ¶ 22, p. 29; and (6) are not required by the Religious Freedom Restoration Act, *id*. ¶ 18, p. 28.  Not one of these contentions passes muster.  (The Constitutional claims have already been addressed and need not be revisited here.)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 616-8491**

**A.      The Rules Are Not in Excess of Statutory Authority.**

Congress gave the Agencies wide discretion to craft minimum requirements for women's preventive healthcare and screenings.  The preventive services requirement of the PHSA, as modified by the ACA, is structured to operate through an exercise of agency discretion to craft minimum requirements for women's preventive healthcare and screenings. That is, the statute itself does not mandate coverage of any particular services; instead, the PHSA requires that covered group health plans "shall, . . . at a minimum provide coverage for . . . with respect to women, such additional preventive care and screenings . . . as provided for in comprehensive guidelines supported by the Health Resources and Services Administration for purposes of this paragraph." 42 U.S.C. § 300gg-13(a)(4).  The ACA then delegates general regulatory authority to the Agencies to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of the ACA.  *Id*. § 300gg-92; 26 U.S.C. § 9833; 29 U.S.C. § 1191c.  Inherent in these provisions is a direction by Congress to develop "comprehensive guidelines . . . for purposes of this paragraph" to determine how such "preventive care and screenings" will be "provided"; no such guidelines pre-dated the ACA.  *See* 76 Fed. Reg. at 46,623; 82 Fed. Reg. at 47,794.

The Agencies (as administering agencies of the applicable statutes), including HHS (as the Agency within which HRSA is located), possess general rulemaking authority to guide the development of those guidelines.  The text and structure of the preventive coverage provision are a clear grant of authority to the Agencies.  Section (a) of that provision identifies four categories of services for which covered health plans must provide coverage without any cost-sharing requirements:

> (1) evidence-based items or services that have in effect a rating of "A" or "B" in the current recommendations of the United States Preventive Services Task Force;
>
> (2) immunizations that have in effect a recommendation from the Advisory Committee on Immunization Practices of the Centers for Disease Control and Prevention with respect to the individual involved; and
>
> (3) with respect to infants, children, and adolescents, evidence-informed preventive care and screenings provided for in the comprehensive guidelines supported by the Health Resources and Services Administration.

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 29
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 616-8491**

(4) with respect to women, such additional preventive care and screenings not described in paragraph (1) as provided for in comprehensive guidelines supported by the Health Resources and Services Administration for purposes of this paragraph.

42 U.S.C. § 300gg-13(a)(1)-(4).  Because the recommendations and guidelines noted in subsections (a)(1)–(3) were in existence at the time Congress enacted that statutory provision, but the guidelines described in subsection (a)(4) were not, the reference to such guidelines must be understood as a grant of authority to develop them.

Several textual indicia underline the Agencies' broad latitude to determine the scope of coverage and to establish exemptions.  The preventive services Mandate is only one among a list of four coverage requirements included in the relevant portion of the ACA.  *See* 42 U.S.C. § 300gg-13(a)(1)-(a)(4).  Yet it differs textually from the other requirements.  For example, the textually-adjacent requirement that employers cover children's health services renders obligatory those children's services "provided for" by HRSA.  *See id*. § 300gg-13(a)(3) (requiring coverage of, "with respect to infants, children, and adolescents, evidence-informed preventive care and screenings *provided for* in the comprehensive guidelines supported by the Health Resources and Services Administration") (emphasis added).  By contrast, the preventive services Mandate requires provision of preventive services "*as* provided for" by HRSA (emphasis added).  *See id*. § 300gg-13(a)(4) (requiring coverage of, "with respect to women, such additional preventive care and screenings not described in paragraph (1) *as provided for* in comprehensive guidelines supported by the Health Resources and Services Administration for purposes of this paragraph") (emphasis added).  The use of the word "as" reinforces Congress's delegation to HRSA to determine not only the services covered, but also the manner and reach of that coverage.

Similarly, two of the coverage requirements adjacent to the women's preventive services Mandate require coverage that is "evidence-based" or "evidence-informed."  *See id*. § 300gg-13(a)(3) (requiring "evidence-informed preventive care and screenings" for children); *id*. § 300gg-13(a)(1) (requiring coverage of "evidence-based items or services that have in effect a rating of 'A' or 'B' in the current recommendations of the United States

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 30
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491

Preventive Services Task Force").  The Mandate includes no such requirement.  *See id*. § 300gg-13(a)(4).  To be sure, the Agencies' Guidelines are grounded in evidence.  But the omission of the requirement that the Mandate cover all "evidence-based" services leaves open the possibility that other, policy-based concerns should play a role in determining its scope.

For these reasons, since their very first rulemaking on this subject in 2011, the Agencies have consistently interpreted this delegation of authority to include the power to provide limited exceptions that reconcile the ACA's preventive services provision with strongly held religious and moral views on the sensitive issue of contraceptive coverage.  *See, e.g.*, 76 Fed. Reg. at 46,625; 78 Fed. Reg. at 39,889.  Because the Agencies acted within the authority granted to them under these statutes, they did not violate the APA.  *See Chevron U.S.A. v. Nat'l Res. Def. Council*, 467 U.S. 837, 842-43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

Even if the statutory text were somehow ambiguous, this Court should defer to the Agencies' reasonable interpretation; under the familiar *Chevron* framework, a court must defer to an agency's reasonable interpretation of an ambiguous statute if the agency was given rulemaking authority.  *Chevron*, 467 U.S. at 843 ("[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute").  Hence, even if the statutes were ambiguous in their grant of discretion to the Agencies to craft or modify contraceptive coverage exemptions, the Agencies' construction must prevail because it is a reasonable one.

Plaintiff's alternative suggestion, that the Guidelines supported by HRSA under subsection (a)(4) can *never* allow exemptions except as required by RFRA or the First Amendment, cannot be correct.  As noted above, the statute expressly contemplates a policy decision about the extent to which preventive services for women must be covered under that subsection.  Although the statute does not expressly mention exemptions, neither does the

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 31
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491

statute mention contraception.  *See* 42 U.S.C. § 300gg-13(a)(4).  What the statute does say is that the Guidelines only "shall" apply to the extent HRSA provides for and supports their application.  HRSA has decided to do neither with respect to exempt entities.  In light of other provisions of federal law that limit the government's power to require contraceptive coverage, *see, e.g.*, *Hobby Lobby*, 134 S. Ct. at 2785 (holding that "[t]he contraceptive mandate, as applied to closely held corporations, violates RFRA"), Plaintiff's reading of the statute as prohibiting any exemptions would threaten the validity of the contraceptive mandate itself.  And even a reading of subsection (a)(4) as authorizing HRSA to adopt exemptions only when absolutely required to do so would make it nearly impossible for the Agencies to maintain a contraceptive mandate, due to the threat of perpetual litigation about the scope of such exemptions.

### B.      The Rules Otherwise Comply with the ACA.

The Rules also do not violate the ACA's non-discrimination requirement, 42 U.S.C. § 18116, or its prohibition on unreasonable barriers to healthcare, § 18114.

Section 18116 of Title 42 states, in relevant part, that no individual shall "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments)" on a ground prohibited under "title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.)."  Title IX prohibits sex discrimination.  Plaintiff is incorrect in its assertion that the Rules discriminate based on sex, Compl. ¶ 21, p. 29, as discussed below at § IV.C.[16]  Plaintiff has identified no legal or other authority suggesting that narrowing requirements for contraceptive coverage constitutes sex discrimination.  In addition, RFRA requires the Religious Exemption Rule, *see* § IV.D, and RFRA takes precedence over any

---

[16] The test for gender discrimination under Title IX tracks the test under Title VII.  *See Emeldi v. Univ. of Oregon*, 698 F.3d 715, 724-25 (9th Cir. 2012); *Bolla v. McClain*, 469 F. App'x 531, 532 (9th Cir. 2012).

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 32
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 616-8491**

obligations imposed by § 18116.  42 U.S.C. § 2000bb-3; *see also* 45 C.F.R. § 92.2(b)(2) (2016).

    With respect to § 18114, Plaintiff argues—also without legal authority—that the Rules create an unreasonable barrier to medical care.  Compl. ¶ 22, p. 29.  However, the Rules do not impose affirmative barriers on access to contraception; they merely narrow the coverage mandate.  *Cf. Harris v. McRae*, 448 U.S. 297, 316 (1980) ("[A]lthough government may not place obstacles in the path of a woman's exercise of her freedom of choice, it need not remove those not of its own creation[, such as indigency].").  A contrary interpretation would require reading § 18114 to mandate the provision of all "appropriate medical care,"[17] rendering the ACA's extensive discussion of Essential Health Benefits surplusage.  *See generally* 42 U.S.C. §§ 18021, 18022.  Moreover, Plaintiff does not even argue that the purported "barrier"—*i.e.*, a narrowly drawn exemption for certain employers with sincere religious and moral objections to providing contraceptive coverage—is *unreasonable*.  That would be a difficult showing here given the absence of a statutory requirement that HRSA include contraceptive services in the preventive services Guidelines, the numerous other programs providing contraception, *see* 82 Fed. Reg. at 47,803, and the continued availability of the accommodation.  Finally, the need to add the Women's Health Amendment to the ACA *after* both § 18116 and § 18114 were included demonstrates that neither provision was understood to provide an alternative mandate for preventive or contraceptive coverage.  *Compare* 155 Cong. Rec. S11607, S11646 (daily ed. Nov. 19, 2009) (including the non-discrimination provision at § 1557 and the barriers provision at § 1554), *with* 155 Cong. Rec. S12265, S12277 (daily ed. Dec. 3, 2009) (adding the Women's Health Amendment).

---

[17] Furthermore, § 18114 does not define "appropriate medical care."  "Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions— it does not, one might say, hide elephants in mouseholes."  *Whitman v. Am. Trucking Assns., Inc.*, 531 U.S. 457, 468 (2001).

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 33
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491

### C.      The Rules Do Not Violate Title VII.

Plaintiff also alleges that the Rules and Guidelines violate Title VII's prohibition on pregnancy-related sex discrimination—and by extension, the APA.  Compl. ¶ 20, p. 28.  Not so.

Title VII prohibits "employer[s]" from discriminating against an employee or job applicant "because of" or "on the basis of" "sex."  42 U.S.C. § 2000e-2(a), (b).  It extends similar prohibitions to employment agencies and labor organizations.  *Id*. § 2000e-2(b), (c).  In 1978, Congress enacted the Pregnancy Discrimination Act, 92 Stat. 2076, which modified the definition of sex-based discrimination to specify, in relevant part, that "because of sex' . . . include[s] . . . because of or on the basis of pregnancy, childbirth, or related medical conditions."  *Id*. § 2000e(k).  Title VII prohibits, absent a showing of good cause, both explicitly sex-based distinctions (disparate treatment) as well as distinctions that have a disproportionate effect on one sex (disparate impact).  *Id.* § 2000e; *see E.E.O.C. v. Metal Serv. Co.*, 892 F.2d 341, 346–47 (3d Cir. 1990).  To establish a *prima facie* case of disparate impact in a sex discrimination case, a plaintiff must essentially show "a significant statistical disparity," *Ricci v. DeStefano*, 557 U.S. 557, 587 (2009), in the effect of a regulation on men and women.  The defendant can then rebut the suggestion of invidious discrimination by demonstrating that the distinction is required as a matter of "business necessity" or, in the case of the government, the "public interest."  *Id.*; *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.,* 135 S. Ct. 2507, 2518 (2015) ("a business justification—or, in the case of a governmental entity, an analogous public interest").

As a threshold matter, APA relief is unavailable on this claim.  A plaintiff may bring an APA claim only if there is no other adequate legal remedy available.  5 U.S.C. § 704.  But, if Plaintiff's Title VII argument had any merit, an adequate remedy would be available:  a Title VII suit against allegedly discriminating employers who avail themselves of the exemptions.  *See Wash. Legal Found. v. Alexander*, 984 F.2d 483, 486 (D.C. Cir. 1993) (discrimination suits against third parties provide an adequate alternative remedy).

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 34
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491

More fundamentally, however, the Rules do not engage in sex discrimination because the Rules do not draw distinctions on the basis of sex or pregnancy. Rather, they draw coverage distinctions based on whether an employer religiously or morally objects to facilitating the provision of contraceptives. That the Rules relate to contraceptives for women does not establish that they discriminate on the basis of sex. Though the Rules expand the exemption for female contraceptives, male contraceptives remain completely uncovered under federal law. *See In Re Union Pac. R.R. Emp't Practices Litig.*, 479 F.3d 936, 940–42 & n.1 (8th Cir. 2007) (holding that Title VII "does not require coverage of contraception because contraception is not a gender-specific term like potential pregnancy, but rather applies to both men and women"). Thus, the Rules do not violate Title VII's prohibition on sex-based disparate treatment. *Frank v. United Airlines, Inc.*, 216 F.3d 845, 853 (9th Cir. 2000) ("An employer's policy amounts to disparate treatment if it treats men and women differently on its face."). Nor do they run afoul of Title VII's disparate impact rules. The Rules do not have a disproportionate impact on women because no male may receive coverage for contraceptive services pursuant to 42 U.S.C. § 300gg-13(a)(4), whereas female contraceptive services are covered except where an exemption applies.

Even if the Rules did have a statistically disproportionate effect on women, they still would not violate Title VII. First, the Rules are supported by the public interest (the equivalent, in this context, of business necessity), which would rebut a *prima facie* case. As noted earlier, the government has a legitimate interest in accommodating sincerely held religious and moral beliefs, and the Rules fulfill this interest by alleviating the burden imposed by the Mandate. Second, considerations under RFRA compelled the Agencies to issue the Religious Exemption Rule, *see* § IV.D, and this statute takes precedence over any obligations imposed by Title VII. *Id.* § 2000bb-3 ("This chapter applies to all Federal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993.").

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 35
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491

### D.     RFRA Requires the Religious Exemption Rule.

Plaintiff contends that "[t]he expanded exemptions are not required by the Religious Freedom Restoration Act or any other provision of federal law."  Compl. ¶ 18, p. 28.  That argument is a straw man with respect to the Moral Exemption Rule because the Agencies did not rely on RFRA as support for that rule; the ACA itself provides ample support for both Rules by affording the Agencies and HRSA the discretion to create exemptions to accommodate sincere religious and moral objections to providing contraceptive coverage. *See supra* IV.A.  And the Religious Exemption Rule is required by RFRA.

As a general matter, "[u]nder RFRA, the Federal Government may not, as a statutory matter, substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability."  *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 (2006).  But a law that imposes a substantial burden on the exercise of religion is allowed under RFRA if the government "demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb–1(b).

The Religious Exemption Rule reasonably concludes that the Mandate, even as modified by the accommodation, imposes a substantial burden on the exercise of religion.  82 Fed. Reg. at 47,800.  Plaintiff does not challenge this conclusion.

The Religious Exemption Rule also reasonably concludes that there is no compelling interest that justifies the imposition of this substantial burden on the exercise of religion.  The relevant inquiry is not the governmental interests served by the Mandate in general, but rather the governmental interests served by applying the Mandate to the small percentage of employers with sincere religious or moral objections to it.  *Hobby Lobby*, 134 S. Ct. at 2779.[18]

---

[18] The *Hobby Lobby* Court did not hold that the government had a compelling interest in providing cost-free contraceptive coverage to the employees of objecting employers.  Rather, the Court assumed that point for the sake of argument.  *Hobby Lobby Stores*, 134 S. Ct. at 2780.  As stated in Justice Kennedy's concurrence, the Court's opinion, was "premise[d]" on the "assumption" that the government had shown a compelling interest.  *Id.* at 2785-86.  In any event, Defendants are unaware of any case in which a court has held that the government has a compelling interest when the government itself has not asserted such an interest.

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 36
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491

The Rule's preamble thoroughly discusses the Agencies' rationale for determining that there is no compelling interest in imposing the Mandate on this small percentage of employers.  82 Fed. Reg. at 47,800–06.  The Agencies explained, among other things, that:  (i) the fact that Congress has never required private employers to offer contraceptive coverage undermines any argument that the government has a compelling interest in requiring a small subset of employers to provide such coverage over their sincere religious or moral objections, *id.* at 47,800–01; (ii) the underinclusiveness of the ACA undermines the claim of a compelling interest in the provision of cost-free contraceptives under the Mandate to that small subset of employers, 75 Fed. Reg. at 34,540 (noting that Mandate does not extend to grandfathered plans); (iii) the scope of the pre-existing religious and church-plan exemptions undercuts the argument that there is a compelling interest in requiring objecting entities to facilitate the provision of cost-free contraceptive coverage, *cf. Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1658-59 (2017); and (iv) the Agencies have determined, in their expert judgment, that the administrative record does not contain adequate evidence to meet the high standard of proving a compelling interest in requiring the narrow class of objecting employers to provide cost-free contraceptive services, 82 Fed. Reg. at 47,804–05.

Nor, contrary to Plaintiff's characterization, did the Agencies' decision "run[] counter to the evidence submitted during the comment period for these [Rules] and the predecessor rules."  Compl. ¶ 12, p. 27.  The Rules leave the Mandate in place for most applicable entities. After canvassing the medical evidence, however, the Agencies concluded that, with regard to the evidence on the effect of contraceptives and broad coverage mandates on women's health, the record was more ambiguous than previously acknowledged.  82 Fed. Reg. 47,805. This technical judgment falls within the Agencies' expertise and so is entitled to deference. *Tri-Valley Cares v. U.S. Dep't of Energy*, 671 F.3d 1113, 1124 (9th Cir. 2012).

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 37
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 616-8491**

**E.   At a Minimum, the Religious Exemption Rule Was a Permissible Response to the Substantial Burden on Religious Exercise Imposed by the Mandate**.

Even if RFRA did not *require* the expansion of the religious exemption, at a minimum, RFRA *authorizes* the Agencies to adopt the Religious Exemption Rule.   The Supreme Court's decision in *Hobby Lobby* makes clear that, absent some form of exemption or accommodation, the Mandate imposes a substantial burden on employers with religious objections to providing contraceptive coverage.   134 S. Ct. at 2775.   As noted above, previously, the Agencies "attempted to develop an accommodation that would either alleviate the substantial burden imposed on religious exercise or satisfy RFRA's requirements for imposing that burden."   82 Fed. Reg. at 47,806.   But the Agencies' attempts did not resolve the sincere religious objections asserted by dozens of employers, and instead led to half a decade of RFRA litigation and serial regulatory amendments.   *Id.* at 47,814.   Those efforts imposed significant costs on the Agencies and the courts—as well as on regulated entities and their plan participants and beneficiaries, who were left uncertain about their legal rights and obligations.

Under these circumstances, the Agencies reasonably determined that rather than engaging in further efforts to "revis[e] the accommodations previously offered"—an approach that would have entailed continued litigation in dozens of cases, with no foreseeable end—a broader exemption was "the most appropriate administrative response" to the substantial burden identified in *Hobby Lobby*.   *Id.* at 47,806.   The Agencies emphasized that they would have adopted the Religious Exemption Rule "[e]ven if RFRA does not compel [it]."   *Id.*

This independent ground identified by the Agencies provides a fully sufficient basis for upholding the Religious Exemption Rule.   Under *Hobby Lobby*, RFRA required the Agencies to take some action to respond to the substantial burden imposed by the Mandate and then-existing exemptions.   134 S. Ct. at 2775.   Plaintiff essentially asserts that because (in its view) the prior administrative accommodation did not violate RFRA, the Agencies were required to maintain it.   But even if Plaintiff is correct that the accommodation did not

---

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 38
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

violate RFRA, Plaintiff identifies no legal authority precluding the Agencies from responding to the substantial burden identified in *Hobby Lobby* with a broader exemption.  No such authority exists.  "RFRA does not . . .  prescribe the accommodation that the government must adopt" in response to a substantial burden; instead, it leaves agencies with a measure of "discretion to fashion an appropriate and administrable response to respect religious liberty interests implicated by their own regulations."  82 Fed. Reg. at 47,806.  And allowing agencies to choose to respond to a substantial burden on religious exercise with an exemption rather than an accommodation is particularly appropriate here, where the Agencies have already attempted several accommodations, and those accommodations have been the subject of widespread legal challenges that have divided the courts and (at an absolute minimum) raise serious questions about their validity.

Washington essentially argues that the Agencies cannot go beyond what RFRA strictly requires.  But that approach would place agencies in an impossible position when facing claims that statutory or regulatory requirements substantially burden the exercise of religion.  On Plaintiff's view, an agency faced with such a claim would apparently be legally prohibited from affording an exemption unless it concluded that no possible accommodation short of an exemption would be possible and consistent with RFRA.  That is a recipe for protracted and unnecessary litigation.  It is also inconsistent with the Supreme Court's recognition in analogous contexts that an entity faced with potentially conflicting legal obligations should be afforded some leeway.  For example, the Court has held that, under Title VII, an employer may "engage in intentional discrimination for the asserted purpose of avoiding or remedying an unintentional disparate impact" if the employer has "a strong basis in evidence to believe it will be subject to disparate-impact liability if it fails to take the race-conscious, discriminatory action."  *Ricci*, 557 U.S. at 585.  Critically, the Court did not require the employer to prove that it *actually would* "be subject to disparate-impact liability."  Instead, the Court adopted a more flexible standard that "appropriately constrains employers' discretion in making race-based decisions" but was not "so restrictive that it allows employers

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 39
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491

to act only when there is a provable, actual violation"—a standard that would have left employers in an untenable position. *Id.* at 583. So too here. Particularly where, as in this case, the Agencies are faced with substantial claims that RFRA compels an exemption—claims that have been accepted by many courts—the Agencies should be permitted to adopt that exemption even if the courts might ultimately have concluded that some form of accommodation would have been consistent with RFRA. *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007) (When a statutory scheme contains "a fundamental ambiguity" arising from "the differing mandates" of two provisions, "it is appropriate to look to the implementing agency's expert interpretation" to determine which "must give way").

## CONCLUSION

Defendants respectfully request the Court dismiss this action or enter summary judgment for Defendants.

DATED: December 11, 2017                    Respectfully submitted,

CHAD A. READLER
Principal Deputy Assistant Attorney General

ETHAN P. DAVIS
Deputy Assistant Attorney General

JENNIFER D. RICKETTS
Director, Federal Programs Branch

JOEL McELVAIN
Assistant Director, Federal Programs Branch

*/s/ Elizabeth L. Kade*
ELIZABETH L. KADE
(D.C. Bar No. 1009679)
Trial Counsel
U.S. Dep't of Justice, Civil Div.
Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C.  20530
(202) 616-8491
Elizabeth.L.Kade@usdoj.gov

*Attorneys for Defendants*

DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT - 40
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 616-8491