The Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 2:17-cv-01510 RBL |
| Plaintiff, | PLAINTIFF'S MOTION TO CONTINUE THE DEADLINE FOR RESPONDING TO DEFENDANTS' MOTION TO DISMISS OR MOTION FOR SUMMARY JUDGMENT |
| v. | |
| DONALD TRUMP, et al., | |
| Defendants. | NOTED FOR: DECEMBER 22, 2017 |

## I.   INTRODUCTION

This lawsuit challenges two federal rules which create sweeping exemptions to the Affordable Care Act's mandate that health insurance plans cover women's preventive health care without any cost-sharing obligations. The Rules now allow virtually any non-governmental employer that objects to contraception to opt out of the carefully-crafted accommodation process that allowed them to avoid facilitating or subsidizing contraception, while still enabling employees to obtain no-cost contraception directly from the insurance issuer or third party administrator. This about-face turn in federal policy jeopardizes the health and economic well-being of a substantial number of women in Washington State. The Rules also harm the State by shifting the cost of covering such contraceptive care from private employers, colleges, issuers, administrators, and the

PLAINTIFF'S MOTION TO CONTINUE
THE DEADLINE FOR RESPONDING TO
DEFENDANTS' MTD/MSJ
NO. 2:17-cv-01510 RBL

1

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Federal Government to State-funded programs, and increasing the number of unplanned pregnancies, a substantial percentage of which are funded by the State.

To help demonstrate why the State is harmed by these rules, and, consequently, why the Court has subject matter jurisdiction over the State's lawsuit, the State has sought limited discovery from third parties to establish that Washington employers will take advantage of these new exemptions, and that some of their employees will seek coverage from state-funded programs as a result. The Federal Government's Motion to Dismiss or for Summary Judgment (Dkt. 15) exemplifies why the State's limited jurisdictional discovery should be allowed before the State responds to the Motion, as it argues first and foremost that the State cannot show a cognizable harm from the new Rules because the State has not identified "any" employer that will utilize the new exemption, or "any" employee who will lose coverage and have to turn to state-funded services. Dkt. 15 at 18.

Accordingly, the State of Washington asks this Court to extend the deadline for the State's response to the Federal Government's Motion to Dismiss or for Summary Judgment until 14 days after the State is able to complete its limited jurisdictional discovery with respect to the Federal Government's standing challenges. Alternatively, if the Court grants the Federal Government's Motion for a Protective Order (Dkt. 13) or otherwise orders that the State not be allowed to take its discovery, the State requests a modest, 10-day adjustment to the presumptive deadline to respond to the Federal Government's Motion to Dismiss or for Summary Judgment, until January 12, 2018, in light of the length of the Federal Government's Motion, the complexity of the facts and legal issues involved, the size of the Administrative Record (AR), which was not filed until the day the

PLAINTIFF'S MOTION TO CONTINUE
THE DEADLINE FOR RESPONDING TO
DEFENDANTS' MTD/MSJ
NO. 2:17-cv-01510 RBL

2

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  Federal Government filed its Motion, and two holidays occurring within the period of time the State
2  has to respond.

## II. STATEMENT OF FACTS

**A.  Contraceptive Coverage Under the Affordable Care Act and the Challenged Rules**

The Affordable Care Act (ACA) requires group health plans and health insurance issuers to provide coverage for certain preventive services without any cost-sharing requirements, including, "with respect to women, such additional preventive care and screenings," "as provided for in comprehensive guidelines supported by the Health Resources and Services Administration [(HRSA), part of the federal Department of Health and Human Services (HHS)]."[1] Since they were first enacted, the HRSA guidelines provide that all FDA-approved methods of women's contraception are considered part of the preventive care and screenings required to be covered under the ACA. *See* HRSA, Women's Preventive Services: Required Health Plan Coverage Guidelines, AR CD1 at 56-57.

HHS, Treasury, and the Department of Labor all administer provisions of the ACA, and they all enacted rules requiring coverage as reflected above. *See* Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services Under the PPACA, 76 Fed. Reg. 46,621, 46,625 (Aug. 3, 2011), AR CD9, Doc. 9; 77 Fed. Reg. 8,725, 8,726–27 (Feb. 15, 2012). They also created a limited exemption for certain religious entities as defined by tax law that objected to contraception based on sincerely-held religious beliefs, and a more broadly-available accommodation for other non-profit and closely-held for-profit corporations that claimed the religious objection. *See* 77 Fed. Reg. 8,725; 80 Fed. Reg. 41,318, 41,324 (July 14, 2015).

---
[1] 42 U.S.C. § 300gg-13(a)(4).

PLAINTIFF'S MOTION TO CONTINUE
THE DEADLINE FOR RESPONDING TO
DEFENDANTS' MTD/MSJ
NO. 2:17-cv-01510 RBL

3

While an exemption results in affected women being denied coverage for contraception, the accommodation allowed women to access no-cost contraception from the employer's third party administrator or insurance issuer, without requiring the objecting employer or institutions' participation, financial or otherwise.

On May 4, 2017, the President signed Executive Order No. 13,798, "Promoting Free Speech and Religious Liberty," 82 Fed. Reg. 21,675 (May 4, 2017). This Executive Order—and the Agencies' implementation of it through the enactment of two new rules—effectively nullified the contraceptive coverage requirement by allowing almost any non-governmental entity to claim an exemption (religious or moral) and by making the accommodation process entirely optional for employers and institutions of higher education. 82 Fed. Reg. 47,792 (Oct. 13, 2017) (Religious Exemption Rule); 82 Fed. Reg. 47,838 (Oct. 13, 2017) (Moral Exemption Rule) (collectively, the Rules).

**B.   The Rules Will Cause Injury To Washington**

On October 9, 2017, Washington filed this lawsuit asserting that the Rules were issued without notice and comment as required under the Administrative Procedure Act (APA), exceed the authority of the agencies under the ACA, contravene provisions of the ACA and are arbitrary and capricious, and violate equal protection and the establishment clause.[2] Rather than continue to allow for both contraceptive access by women and sincerely held religious beliefs, the Defendants rushed into effect two Interim Final Rules (IFR): one with the exceedingly broad religious exemption and the other, the newly minted "moral" objection exemption. 82 Fed. Reg. 47,792;

---

[2] Dkt. 1.

PLAINTIFF'S MOTION TO CONTINUE
THE DEADLINE FOR RESPONDING TO
DEFENDANTS' MTD/MSJ
NO. 2:17-cv-01510 RBL

4

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

82 Fed. Reg. 47,838. The new Rules gut the ACA's guarantee regarding women's contraception. The State has alleged that these rules will impact the State financially and otherwise.[3]

Allowing any employer or institution of higher education to opt out of the accommodation process and deny female students and employees contraception coverage entirely will increase overall health care costs for Washington State, Washington residents, and also increase the risk of poor health outcomes.[4] In addition to the financial and medical harm to women, the State will suffer direct and imminent proprietary harm through increased demands to State-funded contraceptive care.[5] Washington's Medicaid program, for example, serves as a secondary payer to thousands of women who are also covered by private insurance. Accordingly, a woman eligible for Medicaid who loses coverage through her employer will obtain contraception coverage through Medicaid, or if she becomes pregnant and does not have full coverage for pregnancy-related expenses from her employer, she will have her pregnancy-related expenses covered by Medicaid, increasing the State's financial obligations.[6] The State also ends up funding the care associated with the majority of unplanned pregnancies and births in Washington State.[7] As such, an increase in unplanned pregnancies will also increase the State's costs.

The Federal Government itself assumes that over half of the employers who had previously used the accommodation process will *immediately* take advantage of the

---

[3] *See, e.g.*, Dkt. 1, ¶¶ 8, 12-16, 54-82.
[4] Dkt. 1, ¶¶ 70-82.
[5] Dkt. 1, ¶¶ 74-82.
[6] Dkt. 1, ¶¶ 74, 77-82.
[7] Dkt. 1, ¶¶ 78-82. *See also* Guttmacher Institute, "State Facts About Unintended Pregnancy: Washington," (August 2017), *available at* https://www.guttmacher.org/fact-sheet/state-facts-about-unintended-pregnancy-washington (last visited Dec. 14, 2017) (noting 63.1% of unplanned births in Washington were publicly funded in 2010).

PLAINTIFF'S MOTION TO CONTINUE THE DEADLINE FOR RESPONDING TO DEFENDANTS' MTD/MSJ NO. 2:17-cv-01510 RBL

5

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

newly-available exemptions. *See* 82 Fed. Reg. 47,816 ("assuming that more than half of entities that have been using the previous accommodation will seek immediate revocation of their accommodated status"); 82 Fed. Reg. 47,818 ("We expect the 122 nonprofit entities that specifically challenged the accommodation in court to use the expanded exemption . . . ."). There is already evidence to show that that is, in fact, what is happening, which is why the State is seeking discovery to further establish this point.[8] As such, there will be an increase in the number of women who do not receive coverage for contraception through their employer- or college-sponsored health insurance, and this will result in an increase in the number of Washington residents eligible for and seeking services funded by the State of Washington.[9]

C. **Washington's Discovery Addressing State Standing**

On November 30, 2017, Washington issued subpoenas to eight employers that conduct business within the borders of the state.[10] These employers had either a) previously invoked the

---

[8] For example, one Washington employer specifically told its employees just two weeks after the new rules were issued that "the accommodation is no longer applicable." Dkt. 22, ¶¶ 7, 8; Dkt. 22-1 at 1 ("Just a reminder, CCS/CHS medical plans have not covered any services that are not in alignment with the teachings of the Catholic Church. Under the Affordable Care Act (ACA), insurance carriers were required to provide these services to CCS/CHS employees even though CCS/CHS' medical plan did not cover or pay for them [referencing the accommodation process]. The Federal government recently made changes to the ACA rules, and the accommodation is no longer applicable for CCS/CHS. As a result, certain services may now be out-of-pocket expenses for CCS/CHS employees.").

Another Washington employer, a for-profit employer, in fact, admits it does not provide certain contraceptive coverage and is not utilizing the accommodation process, because it believes it was effectively exempt prior to the rules due to an agreement with the federal government. Dkts. 22-2 - 22-3; Dkt. 19 at 3; Dkt. 19-3. As the State will argue in response to Cherry Creek's Motion to Quash, Cherry Creek's reliance on an injunction that clearly has no effect on the current rules, Dkt. 22-3, and an agreement from the Department of Justice not to enforce pending a decision from the Supreme Court in *Zubik v. Burwell* is misplaced. The Supreme Court did issue a decision in *Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (remanding to lower courts), so the letter agreement is no longer in effect. In any event the ultimate controlling fact is that the prior rules required Cherry Creek to provide contraception services or utilize the accommodation, and Cherry Creek is not doing so because the Federal Government is not requiring it to.

[9] Dkt. 1, ¶¶ 74, 77-82; *see also* 82 Fed. Reg. 47,816 (recognizing women who lose coverage may seek it "through one of the many governmental programs that subsidize contraceptive coverage to supplement their access."). The State has additional theories of standing not as pertinent to the present motion. Dkt. 1, ¶¶ 54-55.

[10] Dkts. 13-1 – 13-8.

PLAINTIFF'S MOTION TO CONTINUE
THE DEADLINE FOR RESPONDING TO
DEFENDANTS' MTD/MSJ
NO. 2:17-cv-01510 RBL

6

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  accommodation process, or b) participated in litigation against the Federal Government that
2  challenged the accommodation process and argued for an expanded exemption.[11] Initial research
3  indicates that these employers may collectively employ tens of thousands of workers in Washington
4  State.[12] The State is seeking information to determine whether these employers will take advantage
5  of the newly-available exemption, and whether any of the employees may qualify for State-funded
6  services.[13]

Specifically, the subpoenas seek documents and a corporate designee to testify on two main issues. The first is whether the companies utilized the accommodation under the previous Administration's rules and intend to utilize the exemption under the new Rules.[14] The second is the number of employees in Washington in eight pay categories that would qualify them or their dependents for subsidized medical care under Washington-funded programs.[15]

**D.   The Federal Government Moves To Stay the State's Jurisdictional Discovery and To Dismiss the State's Lawsuit for Lack of Jurisdiction**

A week after the State issued its third party discovery, the Federal Government filed a Motion for a Protective Order seeking to stay discovery until its not-yet-filed Motion To Dismiss or Motion for Summary Judgment could be decided by the Court. Dkt. 13. Four days after that, the Federal Government moved to dismiss the case and for summary judgment. Dkt. 15. It claims that the Court should "not reach the merits questions at all," because the "Rules do not apply" to the State and "do not affect any identified state residents." Dkt. 15 at 9. Nonetheless, the Federal

---

[11] Dkt. 22, ¶ 5.
[12] Dkt. 22, ¶ 5.
[13] Dkts. 13-1 – 13-8. As mentioned, the State already has evidence that two employers who would have been subject to the accommodation process before the new rules are considering themselves exempt now. Dkts. 22-1 – 22.3.
[14] *See, e.g.*, Dkt. 13-1, at Schedule A, p. 6.
[15] *See, e.g.*, Dkt. 13-1, at Schedule A, p. 6.

PLAINTIFF'S MOTION TO CONTINUE
THE DEADLINE FOR RESPONDING TO
DEFENDANTS' MTD/MSJ
NO. 2:17-cv-01510 RBL

7

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Government proceeds to argue why the Court should grant summary judgment on the merits of the claims. Dkt. 15 at 20-40. The same day it filed its Motion to Dismiss or for Summary Judgment, the Federal Government also filed its Administrative Record, which appears to consist of nine separate DVDs and over 700,000 pages. Dkt. 14; Dkt. 18.[16]

Prior to the Federal Government's filing of either of its motions, the parties discussed a possible briefing schedule on cross dispositive motions, and reached a tentative agreement on a schedule that would result in the State's dispositive motion and response to the Federal Government's dispositive motion being due January 10, 2018. Declaration of Alicia O. Young in Support of Plaintiff's Motion to Continue the Deadline for Responding to Defendant's Motion to Dismiss or Motion for Summary Judgment (Young Decl.), ¶ 3. However, once it became clear that the State would not be able to accomplish its requested discovery within its planned timeframe (December 15-19) due to opposition from the Federal Government and the deponents, (Dkts. 13, 19) the State determined it needed to hold off on agreeing to a briefing schedule that in all likelihood would need to be adjusted to allow time for jurisdictional discovery. Young Decl., ¶ 8.

Before filing this motion, the State's counsel asked the Federal Government's attorney if the Federal Government would consent to either of the State's alternative requests for relief in this Motion: deferral of further briefing and argument on the Federal Government's dispositive motion pending jurisdictional discovery, or a 10-day extension of the presumptive deadline for the State's

---

[16] As reflected in the 20-page index to the Administrative Record, the Federal Government stops and restarts its numbering several times throughout the Record, sometimes at seemingly random numbers that duplicate other numbers assigned to other documents. Additionally, the Administrative Record contains several documents that are not bates stamped. Dkt. 18.

PLAINTIFF'S MOTION TO CONTINUE
THE DEADLINE FOR RESPONDING TO
DEFENDANTS' MTD/MSJ
NO. 2:17-cv-01510 RBL

8

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

response (consistent with the parties' earlier discussion). The Federal Government would not agree to either. Young Decl., ¶ 9.

### III.   ARGUMENT

Rule 6(b)(1)(A) authorizes the Court to extend the time to respond to a motion "for good cause." " 'Good cause' is a non-rigorous standard that has been construed broadly across procedural and statutory contexts." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010). There is good cause for an extension of time that is "reasonable, justified, and would not result in prejudice to any party." *Id*. at 1260. The court has "broad discretion in supervising the pretrial phase of litigation." *C.F. ex. rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 984 (9th Cir. 2011). Here, as set forth below, both of the State's alternative requests are reasonable, justified, and will not prejudice the Federal Government.

**A.   There Is Good Cause To Continue the Federal Government's Dispositive Motion Until the State Concludes its Jurisdictional Discovery**

The district court is required to resolve challenges to its subject matter jurisdiction before resolving the merits of a case. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (holding court without jurisdiction should not address the merits of a case). Part of the Federal Government's challenge to the State's standing is the contention that the State cannot identify "any" employer in Washington that will utilize the exemption rather than the accommodation, or "any" Washingtonian who will turn to state-funded medical care as a result of losing contraceptive coverage from her employer. Dkt. 15 at 18. While the State disagrees that it is required to prove to that level of specificity the likelihood that the expanded exemptions will harm Washingtonians or increase demand for State-funded services, it should be allowed to

PLAINTIFF'S MOTION TO CONTINUE
THE DEADLINE FOR RESPONDING TO
DEFENDANTS' MTD/MSJ
NO. 2:17-cv-01510 RBL

9

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

show that there *are* employers who will utilize the exemption and there *are* people who will turn to state-funded services as a result.

"[W]here pertinent facts bearing on the question of jurisdiction are in dispute, discovery should be allowed." *America West Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989). *See also Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977) ("Discovery . . . 'should be granted where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary.' "). The Federal Government should not be able to make and rely on a contention that the State is not allowed to refute, particularly when the State diligently sought relevant information as soon as the parties had their Rule 26(f) conference, before the Federal Government even moved for dismissal. Dkt. 22, ¶¶ 2-4. The State's right to jurisdictional discovery would be rendered meaningless if briefing went forward without providing the State a reasonable amount of time to conduct its discovery. *See also* Rule 56(d) (authorizing court to allow time for discovery to respond to motion for summary judgment).

In short, unless the Federal Government is willing to concede that there are Washington employers who were previously subject to the accommodation that will now use the exemption, and that, as a result, women will lose coverage and turn to state-funded contraceptive care, the State should be allowed to conduct targeted jurisdictional discovery to establish these points. Otherwise, the State is prejudiced in its ability to respond to all of the Federal Government's arguments for dismissal. Accordingly, the Court should continue the Federal Government's dispositive motion such that the State is not required to respond until at least 14 days after completing its jurisdictional discovery.

PLAINTIFF'S MOTION TO CONTINUE
THE DEADLINE FOR RESPONDING TO
DEFENDANTS' MTD/MSJ
NO. 2:17-cv-01510 RBL

10

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

### B. Alternatively, There Is Good Cause to Provide a Modest Extension for the State's Response To the Federal Government's Dispositive Motion

In the event that the Court determines that the State is not entitled to conduct its jurisdictional discovery before responding to the Federal Government's dispositive motion, there is still good cause to provide the State with 10 additional days to respond.

First, the Federal Government was allotted 21 extra pages for its Motion, based on the Federal Government's assertions that the case presented a substantial "number of facts" and "complexity of legal issues." Dkt. 11, ¶ 3. While it was apparently able to edit its brief down to 40 pages before filing, this is still 16 pages more than that presumptively allowed by the local rules. These extra pages warrant extra time from the State to review the Federal Government's explanation of the rules and legal arguments.

Second, the Federal Government did not file the Administrative Record, which appears to consist of well over 700,000 pages, until the day it filed its dispositive motion. Dkt. 14; Dkt. 18. The State needs time to review this lengthy record in order to adequately respond to the dispositive motion. The State may also file a cross dispositive motion at the same time it responds to the Federal Government's Motion, but it needs the opportunity to review the record before doing so.

Third, the time the State has to respond to the Federal Government's motion includes two federal holidays, Christmas and New Year's Day, which is why the Federal Government was originally inclined to at least provide the State with eight additional days to respond. Young Decl., Ex. 1. By refusing to agree to the State's request for a modest extension of time to respond, the Federal Government has, apparently, changed its mind on this point. *See Ahanchian*, 624 F.3d at 1259 n.7 (noting in good cause determination that "attorneys, like everyone else,

PLAINTIFF'S MOTION TO CONTINUE
THE DEADLINE FOR RESPONDING TO
DEFENDANTS' MTD/MSJ
NO. 2:17-cv-01510 RBL

11

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

have critical personal and familial obligations that are particularly acute during holidays. It is important to the health of the legal profession that attorneys strike a balance between these competing demands on their time.").

Fourth, the State is promptly seeking this extension well before its response would be due. *See Ahanchian*, 624 F.3d at 1260 (noting good faith where attorney seeks extension "promptly."). Fifth, a short extension of 10 days is not prejudicial to the Federal Government.

All of the above reasons are good cause for the short extension the State is requesting, in the event that the State is not permitted to conduct jurisdictional discovery.

## IV. CONCLUSION

The State respectfully requests the Court to continue the deadline for responding to the Federal Government's dispositive motion until 14 days after the State completes its jurisdictional discovery. Even if the Court will not allow the State to conduct its jurisdictional discovery, the State respectfully requests 10 extra days to respond to the Federal Government's motion (until January 12, 2018) in light of the length of the Federal Government's combined motion, the delayed filing of the Administrative Record and its substantial length, the Federal Government's admission that the facts and legal arguments are "complex," and the two upcoming holidays.

DATED this 14th day of December, 2017.

ROBERT W. FERGUSON
Attorney General

*/s/ Alicia O. Young*
ALICIA O. YOUNG, WSBA #35553
JEFFREY T. SPRUNG, WSBA #23607
CYNTHIA L. ALEXANDER, WSBA #46019
AUDREY L. UDASHEN, WSBA #42868
Assistant Attorneys General
*Attorneys for Plaintiffs*

PLAINTIFF'S MOTION TO CONTINUE THE DEADLINE FOR RESPONDING TO DEFENDANTS' MTD/MSJ
NO. 2:17-cv-01510 RBL

12

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# DECLARATION OF SERVICE

I hereby certify that on December 14, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Elizabeth L. Kade
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC  20530
Elizabeth.L.Kade@usdoj.gov
*Attorney for Defendants*

DATED this 14th day of December, 2017, at Tumwater, Washington.

*/s/ Alicia O. Young*
ALICIA O. YOUNG
Assistant Attorney General

PLAINTIFF'S MOTION TO CONTINUE
THE DEADLINE FOR RESPONDING TO
DEFENDANTS' MTD/MSJ
NO. 2:17-cv-01510 RBL

13

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744