The Honorable Ronald B. Leighton

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>DONALD TRUMP, in his official capacity as President of the United States of America; ERIC D. HARGAN, in his official capacity as Acting Secretary of Health and Human Services; U.S DEPARTMENT OF HEALTH AND HUMAN SERVICES; STEVEN T. MNUCHIN, in his official capacity as Secretary of the Treasury, U.S. DEPARTMENT OF TREASURY; R. ALEXANDER ACOSTA, in his official capacity as Secretary of Labor; and UNITED STATES DEPARTMENT OF LABOR,<br><br>Defendants. | No. 2:17-cv-01510-RBL<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO STAY DISTRICT COURT PROCEEDINGS PENDING RESOLUTION OF APPEALS IN *CALIFORNIA V. HARGAN* AND *PENNSYLVANIA V. TRUMP***<br><br>NOTE ON MOTION CALENDAR: January 5, 2018 |

OPPOSITION TO PLAINTIFF'S MOTION TO STAY DISTRICT COURT PROCEEDINGS PENDING RESOLUTION OF APPEALS IN *CALIFORNIA V. HARGAN* AND *PENNSYLVANIA V. TRUMP* - i
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

Plaintiff has sought to continue Defendants' pending dispositive motion and stay these proceedings until resolution of "expected appeals" of the preliminary injunctions issued in *Pennsylvania v. Trump*, No. 2:17-cv-04540-WB, 2017 WL 6398465 (E.D. Pa. Dec. 15, 2017), and *California v. HHS*, No. 4:17-cv-05783, 2017 WL 6524627 (N.D. Cal. Dec. 21, 2017). *See* Pl.'s Mot. at 1-2 (ECF No. 39). For the reasons explained below, both district courts erred in issuing preliminary injunctions, and the issuance of those injunctions does not present any reason for this Court to stay its hand in this case.

This Court should proceed to a decision in this case, even given the issuance of the preliminary injunctions by the *Pennsylvania* and *California* courts. As a procedural matter, those injunctions were issued only on a preliminary basis; they are subject to revision in later decisions on the merits by those courts. Further, they may (and likely will) be reversed or modified once the issue is presented to the respective courts of appeals. Moreover, the Supreme Court has emphasized the importance of allowing multiple lower courts to consider and rule on legal issues, particularly in cases involving the federal government, so as to assist the Court's own review of important questions of law. *See United States v. Mendoza*, 464 U.S. 154, 160 (1984). This Court should not stay its hand simply because other district courts have opined on the validity of the Rules.

As a substantive matter, the *Pennsylvania* and *California* courts committed numerous errors in their consideration of standing and the merits. With respect to standing, the *Pennsylvania* court concluded that (1) the case implicated the "special solicitude" afforded to States in cases that have a procedural right to challenge certain governmental conduct and quasi-sovereign interests at stake, 2017 WL 6398465, at *5-*6, and (2) Pennsylvania had shown an actual, not conjectural or hypothetical, injury to its fisc. *Id*. at *6-*8. Neither conclusion is correct.

Pennsylvania failed to make the requisite showing for "special solicitude" under *Massachusetts v. EPA*, 549 U.S. 497 (2007), and *Texas v. United States*, 809 F.3d 134 (5th

OPPOSITION TO PLAINTIFF'S MOTION TO STAY DISTRICT COURT PROCEEDINGS PENDING RESOLUTION OF APPEALS IN *CALIFORNIA V. HARGAN* AND *PENNSYLVANIA V. TRUMP* - 1

*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

Cir. 2015), *aff'd by an evenly divided Court*, 136 S. Ct. 2271 (2016) (per curiam).  Even if the *Pennsylvania* court were correct that the cause of action provided in the Administrative Procedure Act ("APA"), 5 U.S.C. § 704, afforded the requisite procedural right—which Defendants do not concede—Pennsylvania never demonstrated a stake in protecting its quasi-sovereign interests.  The court's conclusion otherwise—specifically, that Pennsylvania had demonstrated a cognizable stake in "protect[ing] [the] quasi-sovereign interest [in] the health of its women residents," 2017 WL 6398465, at *6—is erroneous on its face.  That interest is not a quasi-sovereign interest, and the court's *ipse dixit* cannot make it so.  That interest is the interest of Pennsylvania's citizens.  And as Defendants have previously explained, a State may not assert such interests as *parens patriae* against the federal government.  *See* Defs.' Mot. to Dismiss or for Summ. J. at 12-13 (ECF No. 15) ("Defs.' MTD").

The *Pennsylvania* court's reasoning collapsed in on itself when, after invoking the "special solicitude" analysis, it abruptly declined to determine whether Pennsylvania "ha[d] sovereign or *parens patriae* standing" to sue because, it concluded, Pennsylvania had identified a "direct injury to its state coffers."  2017 WL 6398465, at *8 n.5.  But a plaintiff State cannot mix-and-match one interest for the "special solicitude" inquiry and another interest for the standing inquiry itself.  To do so would require reading *Massachusetts v. EPA* to overrule decades of precedent holding that the State cannot assert interests as *parens patriae* against the Federal government, including precedents cited favorably in that decision itself, *see, e.g.*, 549 U.S. at 519 (citing *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592 (1982)), and to alter fundamentally the federal-state relationship, *see id.* at 519 (recognizing that "[w]hen a State enters the Union, it surrenders certain sovereign prerogatives).

The affirmance by an evenly divided court in *Texas* also does not support that expansive reading of *Massachusetts v. EPA*.  To begin, contrary to the *Pennsylvania* court's reasoning, 2017 WL 6398465, at *6, an affirmance by an equally divided court is not entitled to precedential weight.  *See, e.g.*, *Rutledge v. United States*, 517 U.S. 292, 304 (1996); *Durant*

OPPOSITION TO PLAINTIFF'S MOTION TO STAY DISTRICT COURT PROCEEDINGS PENDING RESOLUTION OF APPEALS IN *CALIFORNIA V. HARGAN* AND *PENNSYLVANIA V. TRUMP* - 2

*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

*v. Essex Co.*, 74 U.S. (7 Wall.) 107, 113 (1868).[1] Thus, the decision in *Texas* can add nothing to the precedent set in *Massachusetts*. In any event, the Fifth Circuit clearly distinguished harm to the States' fisc from the particular quasi-sovereign interests that, in the "limited" circumstances of that case, the Fifth Circuit held sufficient to establish standing. *See Texas*, 809 F.3d at 152–53. Thus, the Fifth Circuit's decision controverts the mix-and-match approach of the *Pennsylvania* court.

These errors infected the *Pennsylvania* court's conclusion that the Commonwealth had standing to sue. To possess *standing*, a plaintiff must, *inter alia*, suffer "injury in fact," defined as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and punctuation omitted). The *Pennsylvania* court, however, concluded only that the Rules at issue would "*likely* inflict" injury in fact on Pennsylvania in the form of additional budget expenditures, despite the fact that it specifically acknowledged that Pennsylvania "ha[d] not yet identified a woman resident who ha[d] lost contraceptive coverage as a result of the new [rules]." 2017 WL 6398465, at *7 (emphasis added). The *Pennsylvania* court's conclusion falls far short of the requirement that "[a] threatened injury . . . be *certainly impending* to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (emphasis added).

At the most fundamental level, the *Pennsylvania* court erred in disregarding Pennsylvania's failure to identify any employer who would claim the exemption or any employee who would lose coverage as a result of the new rules. All three of Pennsylvania's preliminary-injunction witnesses admitted that they could not identify any such employer or employee. Those admissions are all the more striking given Pennsylvania's claims that

---

[1] The *Pennsylvania* court's theory that a lack of a remand meant that a majority of the Supreme Court assumed that Texas had standing is unpersuasive. "The Court often grants certiorari to decide particular legal issues while assuming without deciding the validity of antecedent propositions, and such assumptions – even on jurisdictional issues – are not binding in future cases that directly raise the questions." *Domino's Pizza v. McDonald*, 546 U.S. 470, 478-79 (2006).

OPPOSITION TO PLAINTIFF'S MOTION TO STAY DISTRICT COURT PROCEEDINGS PENDING RESOLUTION OF APPEALS IN *CALIFORNIA V. HARGAN* AND *PENNSYLVANIA V. TRUMP* - 3

*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

**U.S. DEPARTMENT OF JUSTICE**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

"millions" of employees will be affected. 2017 WL 6398465, at *1, *15. If this were correct (it is not), Pennsylvania would have been able to include at least one employee as a plaintiff in its action, or at the very least submitted a declaration from one employee. And by contrast with *Texas*, where the court found that as a result of the memorandum at issue in that case, "at least 500,000" undocumented immigrants would be enabled to seek driver's licenses at a specified per-license minimum cost to the state, 809 F.3d at 155, Pennsylvania was unable to identify a single employer who would claim the new exemption or a single employee who would lose coverage and be eligible to use any of the state programs that Pennsylvania identified. The *Pennsylvania* court thus lacked jurisdiction to hear the case.

The *California* court similarly erred. With respect to standing, the *California* court concluded that California had stated a "procedural injury" sufficient for purposes of Article III standing, 2017 WL 6524627, at *9, and statutory standing under the APA, *id*. at 9-10. This conclusion is incorrect. As the court noted, to establish procedural injury a plaintiff must show that the procedures are designed to protect "some concrete threatened interest that is the ultimate basis of their standing." *Id*. at *9. The *California* court erred in holding that the States had adequately alleged an "impact [to] their fiscs" that was "directly traceable" to the Rules, making the States "more than merely a nominal party . . . asserting a quasi-sovereign interest." *Id*. The *California* court noted that the "causation and redressability requirements are relaxed in cases of procedural injury," *id*., but the court failed to find that this alleged injury was a certainly impending (*i.e.*, an actual and imminent, not conjectural or hypothetical) injury in fact. *See Whitmore*, 495 U.S. at 158; *Lujan*, 504 U.S. at 560. The *California* court, like the *Pennsylvania* court, also fundamentally erred in disregarding the States' failure to identify any employer who would claim the exemption or any employee who would lose coverage as a result of the new Rules. The *California* court thus lacked jurisdiction to hear the case.

But even if the *Pennsylvania* and *California* courts had had jurisdiction, their orders would have been erroneous, resting on an unpersuasive claim that the Agencies violated the

OPPOSITION TO PLAINTIFF'S MOTION TO STAY DISTRICT COURT PROCEEDINGS PENDING RESOLUTION OF APPEALS IN *CALIFORNIA V. HARGAN* AND *PENNSYLVANIA V. TRUMP* - 4

*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

notice-and-comment provision of the APA. *See* 2017 WL 6398465, at *9-*14; 2017 WL 6524627, at *11-*15. As the Agencies noted in their motion to dismiss or for summary judgment in this case, their failure to engage in notice-and-comment rulemaking is not actionable because: (1) there is a statutory waiver of the notice-and-comment requirement, obviating the need to determine compliance with the APA's notice-and-comment requirement; (2) they satisfy the APA's good cause exception to notice-and-comment rulemaking; and (3) if the failure to follow notice-and-comment procedures was an error, it was a harmless error. Defs.' MTD at 20-25.

The *Pennsylvania* and *California* decisions incorrectly rejected these arguments. With regard to the statutory waiver argument, the courts concluded that there is no "express" waiver of the notice-and-comment requirement because the statutes at issue do not "clear[ly] . . . abrogate[] the APA," 2017 WL 6398465, at *10; *see also* 2017 WL 6524627, at *12 (finding the statutes at issue contain no "exclusivity provision" governing the court's analysis of an administrative notice). The courts also found that there is no implicit waiver because Congress did not establish procedures "so clearly different from those required by the APA that it must have intended to displace the norm," 2017 WL 6398465, at *10 (citing *Asiana Airlines v. FAA*, 134 F.3d 393, 397 (D.C. Cir. 1998)); *see also* 2017 WL 6524627, at *12 (finding the statutes at issue are "not so clearly different from the APA's procedures so as to reflect an intent to displace them") (citing *Asiana Airlines*). The courts' interpretations are erroneous because they give no meaning to three statutory provisions authorizing the Agencies to "promulgate any interim final rules as the Secretary determines are appropriate" relating to health coverage. *See* Defs.' MTD at 20-21 (citing 26 U.S.C. § 9833; 29 U.S.C. § 1191c; 42 U.S.C. § 300gg-92). Congress must have intended these unique statutory provisions—which are not included in similar grants of regulatory authority and which formed the basis of the Agencies' authority to issue interim-final rules in 2010, 2011, and

OPPOSITION TO PLAINTIFF'S MOTION TO STAY DISTRICT COURT PROCEEDINGS PENDING RESOLUTION OF APPEALS IN *CALIFORNIA V. HARGAN* AND *PENNSYLVANIA V. TRUMP* - 5
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

2014[2]—to have effect. Yet the *Pennsylvania* and *California* courts offered no alternative explanation for or meaning of these provisions. The *Pennsylvania* and *California* courts thus violated the fundamental canon that courts "should construe statutes in a manner that gives effect to all of their provisions." *Mac's Shell Serv. v. Shell Oil Prod. Co.*, 559 U.S. 175, 188 (2010). To give effect to these provisions, the courts should have recognized that they obviate the need for the Agencies to engage in notice-and-comment rulemaking. (To be sure, though, as the Agencies have explained, they accepted comments after issuing the IFRs, which they are now starting to review.)

The *Pennsylvania* and *California* decisions also wrongly rejected the Agencies' good cause argument, making numerous missteps in their analysis. *See* Defs.' MTD at 21-24. First, for example, the courts largely ignored that the good cause inquiry is contextual and must be sensitive to the totality of the factors at play, *see Nat'l Women, Infants, & Children Grocers Ass'n v. Food & Nutrition Serv.*, 416 F. Supp. 2d 92, 107 (D.D.C. 2006), by failing to explain why the combined effect of the factors identified by the Agencies did not support their good cause finding. Second, the courts did not account for the thumb on the scale in favor of good cause provided by the statutory provisions (discussed in the prior paragraph) that authorize the issuance of interim final rules. *Coalition for Parity, Inc. v. Sebelius*, 709 F. Supp. 2d 10, 20 (D.D.C. 2010). Third, the courts ignored the applicable provision of the APA, requiring agency action to be upheld if it is "rational." *Bowman Transp., Inc. v. Ark. Best Freight Sys.*, 419 U.S. 281, 285 (1974). As the Agencies explained in the Rules themselves, the Agencies issued the Rules on an interim final basis because, among other things, uncertainty about the scope of the exemptions may dissuade entities that have grandfathered plans and sincere religious or moral objections to covering contraceptives from making changes that will reduce the cost of those plans. 82 Fed. Reg. 47,792, 47,815, 47,856 (Oct. 13, 2017). The *California* court recited this argument but failed to address it. 2017 WL

---

[2] *Cf. Real Alternatives v. Burwell*, 150 F. Supp. 3d 419, 427 n.6 (M.D. Pa. 2015) (noting that APA notice-and-comment requirements did not apply to the 2011 IFR that was issued under this specific statutory authority).

OPPOSITION TO PLAINTIFF'S MOTION TO STAY DISTRICT COURT PROCEEDINGS PENDING RESOLUTION OF APPEALS IN *CALIFORNIA V. HARGAN* AND *PENNSYLVANIA V. TRUMP* - 6

*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

6524627, at *13. The *Pennsylvania* court rejected this argument because there was no "comment" in the record which "suggests that [employers with grandfathered plans] will make changes to health plans in light of the new agency interpretation." 2017 WL 6398465, at *12. But it was logical to conclude that the (dis)incentives created under the prior rules had kept entities with religious or moral objections to the Mandate from changing grandfathered plans, and "litigation pertaining to the Mandate," 82 Fed. Reg. at 47,856, fully supports that point, *see Roman Catholic Archdiocese of Atlanta v. Sebelius*, No. 1:12-CV-03489-WSD, 2014 WL 1256373 (N.D. Ga. 2014); *Diocese of Fort Wayne-S. Bend, Inc. v. Sebelius*, 988 F. Supp. 2d 958 (N.D. Ind. 2013).[3]

Lastly, the *Pennsylvania* and *California* decisions erred in rejecting the Agencies' harmless error argument, *see* 2017 WL 6524627, at *14-*15; indeed, the *Pennsylvania* decision simply brushed aside this argument in a footnote, *see* 2017 WL 6398465, at *14 n.11. The decisions did not identify any prejudice that the plaintiffs had suffered as a result of the Agencies proceeding through IFRs. *See* Defs.' MTD at 24-25. Instead, they fault the Agencies for failing to seek advance comments on the extension of the religious exemption to publicly traded companies, on the existence of a moral exemption, and on whether companies should be allowed to invoke the exemption without notice. *See* 2017 WL 6398465, at *14 n.11; 2017 WL 6524627, at *14, *15. But the Supreme Court effectively resolved the question regarding publicly traded companies in the *Hobby Lobby* decision, *see Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2769 (2014) ("No known understanding of the term 'person' includes some but not all corporations."). Moreover,

---

[3] The *Pennsylvania* decision also erred in its treatment of *Petry v. Block*, 737 F.2d 1193 (D.C. Cir. 1984). The court concluded that the decision was inapposite because, although the D.C. Circuit held that a remand was unnecessary once the agency had taken comments after promulgating a rule, it did so after concluding that the good cause exception was met. 2017 WL 6398465, at *13 n.10. In fact, however, *Petry*'s holding regarding remand was *not* bound up with a separate, antecedent finding of good cause; it was an alternative holding. *Petry*, 737 F.2d at 1205 ("Thus, even were we to hold, as appellants invite us to do, that the Secretary improperly invoked the good cause exception, we would find ourselves quite unable to fashion a remedy for enforcement of this rule during the now long-gone interim period."). The decision's effort to distinguish that case is thus unavailing.

OPPOSITION TO PLAINTIFF'S MOTION TO STAY DISTRICT COURT PROCEEDINGS PENDING RESOLUTION OF APPEALS IN *CALIFORNIA V. HARGAN* AND *PENNSYLVANIA V. TRUMP* - 7
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

Pennsylvania, California, and Washington have all failed to explain why the mere existence of a moral exemption requires a special justification, in light of the myriad such exemptions that already exist in federal and state law, and the Agencies *have* taken comments on the need for entities with sincere religious objections to provide notice, which was the crux of the fight that led to the *Zubik* vacatur.

Finally, the *Pennsylvania* court's conclusion on substantive APA issues was in error.[4] *See* Defs.' MTD at 25-39. First and foremost, the court erred in failing to accord the Agencies *Chevron* deference in the face of ambiguous statutory text. The court then doubled down on that error by holding that the Religious Freedom Restoration Act ("RFRA") did not compel the new IFRs' exemptions—despite its concession that RFRA compels the prior Administration's exemption for churches. That internally inconsistent conclusion picks and chooses its winners and losers in a manner that should not be persuasive to this Court.

The *Pennsylvania* court reached its conclusion only by erroneously refusing to accord the Agencies the deference they are due under *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837 (1984), claiming that the Agencies had interpreted the statute "in a manner inconsistent with its text." *See* 2017 WL 6398465, at *15. But it is the *Pennsylvania* court's interpretation of the ACA as forbidding any exemptions that is unsupportable. The statute at issue grants broad discretion and does not prohibit granting exemptions. And the ACA delegates general regulatory authority to the Agencies to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of the ACA. 42 U.S.C. § 300gg-92; 26 U.S.C. § 9833; 29 U.S.C. § 1191c. Inherent in these provisions is a direction by Congress to develop "comprehensive guidelines . . . for purposes of this paragraph" to determine how such "preventive care and screenings" will be "provided." *See* 76 Fed. Reg. 46,621, 46,623 (Aug. 3, 2011); 82 Fed. Reg. at 47,794. That conclusion is not only a permissible reading of the statutes, it is plainly the best reading of them.

---

[4] The *California* court only reached procedural APA issues in its decision.

OPPOSITION TO PLAINTIFF'S MOTION TO STAY DISTRICT COURT PROCEEDINGS PENDING RESOLUTION OF APPEALS IN *CALIFORNIA V. HARGAN* AND *PENNSYLVANIA V. TRUMP* - 8
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

The *Pennsylvania* court's suggestion that a parade of CEOs will assert moral objections to providing contraceptive coverage as a smokescreen for a "sincerely held moral conviction that women do not have a place in the workplace" is hyperbolic. *See* 2017 WL 6398465, at *15. In passages that the court ignored, the Rules explain that external factors like the unpopularity of dropping coverage and the cost-neutrality of covering contraception will limit the number of entities that claim either the religious or moral exemption. *See, e.g.*, 82 Fed. Reg. at 47,822. And if a CEO nonetheless were to assert a sincerely held moral conviction that women do not have a place in the workplace, an employee of such an employer could bring a Title VII claim for gender discrimination. *See* 42 U.S.C. 2000e, *et seq*.

The *Pennsylvania* court's reasoning is also internally contradictory. The court held that RFRA required the prior Administration's religious employer exemption, which exempted houses of worship and their integrated auxiliaries from the contraceptive mandate without requiring them to use the accommodation developed for other religious objectors. *See* 2017 WL 6398465, at *18. Implicit in that conclusion is the determination that the accommodation would impose a substantial burden on churches. But in concluding that RFRA does not require the Religious Exemption Rule, the court held that the accommodation does not impose a substantial burden.

If the accommodation substantially burdens churches, then it also substantially burdens religious non-profits and for-profits. This conclusion is consistent with the reasoning of the Rules and also with the Eighth Circuit's decision in *Sharpe Holdings, Inc. v. HHS*, which found that the accommodation requires some religious objectors to "act in a manner that they sincerely believe would make them complicit in a grave moral wrong as the price of avoiding a ruinous financial penalty." 801 F.3d 927, 941 (8th Cir. 2015), *cert. granted, judgment vacated sub nom. HHS v. CNS Int'l Ministries*., No. 15-775, 2016 WL 2842448 (May 16, 2016).

OPPOSITION TO PLAINTIFF'S MOTION TO STAY DISTRICT COURT PROCEEDINGS PENDING RESOLUTION OF APPEALS IN *CALIFORNIA V. HARGAN* AND *PENNSYLVANIA V. TRUMP* - 9
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

Many objectors—about a thousand plaintiffs litigated over fifty cases on this issue—concluded that complying with the accommodation would, in fact, violate their sincerely-held religious beliefs. And as the Supreme Court reasoned in *Hobby Lobby*, it is not the government's role "to say that [objectors'] religious beliefs are mistaken or insubstantial." *Hobby Lobby*, 134 S. Ct. at 2779. The Agencies thus reasonably concluded that "requiring certain objecting entities or individuals to choose between the Mandate, the accommodation, or penalties for noncompliance imposes a substantial burden on religious exercise under RFRA." 82 Fed. Reg. at 47,800.

For the foregoing reasons, this Court should proceed to consider Defendants' motion to dismiss or for summary judgment, and should reject the incorrect reasoning of the *Pennsylvania* and *California* courts.

OPPOSITION TO PLAINTIFF'S MOTION TO STAY DISTRICT COURT PROCEEDINGS PENDING RESOLUTION OF APPEALS IN *CALIFORNIA V. HARGAN* AND *PENNSYLVANIA V. TRUMP* - 10

*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

| | |
|---|---|
| DATED: January 2, 2018 | Respectfully submitted, |
| | CHAD A. READLER<br>Acting Assistant Attorney General |
| | ETHAN P. DAVIS<br>Deputy Assistant Attorney General |
| | JENNIFER D. RICKETTS<br>Director, Federal Programs Branch |
| | JOEL McELVAIN<br>Assistant Director, Federal Programs Branch |
| | */s/ Elizabeth L. Kade*<br>ELIZABETH L. KADE<br>(D.C. Bar No. 1009679)<br>Trial Counsel<br>U.S. Dep't of Justice, Civil Div.<br>Federal Programs Branch<br>20 Massachusetts Avenue, N.W.<br>Washington, D.C. 20530<br>(202) 616-8491<br>Elizabeth.L.Kade@usdoj.gov |
| | *Attorneys for Defendants* |

OPPOSITION TO PLAINTIFF'S MOTION TO STAY DISTRICT COURT PROCEEDINGS PENDING RESOLUTION OF APPEALS IN *CALIFORNIA V. HARGAN* AND *PENNSYLVANIA V. TRUMP* - 11
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-01510 (RBL)

U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902